## NYE v. MUTUAL BEN. LIFE INS. CO. et al.

### No. 250.

Circuit Court of Appeals, Second Circuit.

March 19, 1945.

See, also, 3 F.R.D. 308.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for plaintiffs-appellants.

Campbell, Harding, Goodwin & Danforth, of New York City (William F. Clare, Jr., of New York City, of counsel), for defendants-appellees, Caroline D. Nye Sams and Bonna Joy Sams, an infant.

Before EVANS, CLARK, and FRANK, Circuit Judges.

EVANS, Circuit Judge.

The dispute which provoked this appeal is between two parties who are contesting for the proceeds of a $10,000 life insurance policy which matured Jan. 6, 1943, upon the death of the insured, Olin T. Nye. The trial court submitted the case to a jury. A verdict favorable to the defendants, who were the insured's adopted daughter and her children, and against the plaintiffs, who were the administratrix of the estate of a brother of the insured and the widow of said brother, was returned. A judgment in favor of defendants was duly entered. This appeal followed.

The insured was a lawyer and had been a surrogate and county judge for many years. The policy was issued, October 31, 1927. In 1940 the insured changed his beneficiary to his adopted daughter (interest to her for life and principal to her children). His wife had died. He had two adopted children—a son in whose favor another policy ran, and one of the defendants herein, Caroline D. Nye Sams.

The Facts—On January 1, 1943, Judge Nye summoned several close members of his family to his home and executed the following document, first dictating to a nephew, who in turn dictated it to another nephew who typed it (on yellow paper). The document was then read to Judge Nye, and he stated it was correct. The next day it was handed to Mr. Cate, an insurance agent, who sent it to the com-

510

pany. The testimony is conflicting as to whether Mr. Cate was asked whether the judge should sign the requested change of beneficiary.

The document, which we call a request read:

"$10,000         No. 1,320,976

"$5,000 shall be payable immediately upon my death to my brother, Bertrand W. Nye, and his wife, May L. Nye, jointly. The remaining $5,000 shall be payable to my adopted daughter, Caroline D. Nye Sams, in the same manner as provided in the photostatic copy dated September 3rd, 1940, and attached to the above policy."

One of the questions presented is this, Did this request for change of beneficiary consummate a change under the provision of the policy which read:

"If the Insured has retained such right the Beneficiary may be changed at any time and from time to time while this Policy * * * is in force and not assigned, upon return of the policy to the Company * * * with the Insured's written request for the appropriate indorsement of the Policy by the Company."

The policy was in fact sent to the company with the request for change, and an agent gave the insured a receipt for it.

At the same time he executed this change of beneficiary Judge Nye changed his will.

A serious question in the case arises out of the exclusion of Exhibit 8, which is a form for request for change of Beneficiary, dated January 2, 1943, and signed by the name of "Olin T. Nye" and witnessed by "Bert C. Cate." This document was otherwise not filled in, but the first paragraph reads:

"The Mutual Benefit Life Insurance Company is hereby requested to change the Beneficiary under Policy No. 1,320,976, by making the Policy payable *as set forth in attached memorandum,* unless it shall mature as an endowment * * *."

This Exhibit 8 was stapled to the same request for change of beneficiary which had been typed (on yellow paper) at Judge Nye's direction, and was produced by the insurance company from its files.

In the examination of Judge Nye's nephew, the following colloquy occurred when the Exhibit was excluded on the ground that the signature of the judge was not properly identified:

"Q. Mr. Storch, I show you this paper which has been marked Plaintiffs' Exhibit 8 for identification and I ask you to look at the two signatures which are at the bottom of that sheet of paper and ask you if you can identify either of those signatures? A. Yes. I identify them both.

"Q. And the signature in the left-hand corner is whose signature? A. Bert C. Cate.

"Q. And the signature in the right-hand corner is whose signature? A. Olin T. Nye.

"Mr. Lamb: I again offer that in evidence, your Honor, as the document attached to the yellow sheet.

"Mr. Clare: May I examine on that, if it please the Court?

"The Court: Yes.

"By Mr. Clare:

"Q. Will you take a look at that and tell me if that is Judge Nye's signature? A. Yes, sir. I think it is.

"Q. You think it is. Is it or is it not his signature? A. I would say it is.

"Q. You would? A. In my opinion it is.

"Mr. Clare: I object to that, your Honor, on the ground it is not shown to be the signature of Judge Nye, on the ground that no witness has testified that Judge Nye ever signed it, and on the further ground that it is dated January 2 at the time Judge Nye was being shaved.

"Mr. Lamb: He wasn't being shaved all day.

"The Court: I will sustain the objection to the admission of this exhibit on the ground that it is not sufficiently proved—not on the specific grounds stated by counsel.

"Mr. Lamb: May it appear that it is produced from the file of the company?

"The Court: Yes.

"Mr. Lamb: Exception."

Two questions are presented. First, Did the court err in refusing to admit plaintiffs' Exhibit 8? Secondly, Did the evidence require a directed verdict in plaintiffs' favor?

*Exhibit 8.* The court excluded Exhibit 8 because not sufficiently identified. This was error. This exhibit is entitled "Request for Change of Beneficiary"; it is dated "January 2, 1943", and signed, Olin T. Nye, and witnessed by the agent,

Bert C. Cate. The relevancy of the exhibit is indubitable. If its authenticity is established there can be no question of its relevancy. It tended to show intent; it supports plaintiffs' contention that there was a partial change of beneficiaries. It was stapled to the yellow slip which defined the specific change to be made, and the first paragraph of the form stated the change was to be in accordance with the changes "set forth in the attached memorandum."

As to the identification, it appears that the Judge's nephew, as a witness, identified the signature as his uncle's. No one disputed this identification. The document should have been received in evidence.

*Change of Beneficiary.* It is plaintiffs' contention that the document bearing the request for change of beneficiary constituted a change of beneficiary as a matter of law and a summary judgment should have been granted in their favor.

■ Both sides filed affidavits in support of the issues on summary judgment. The trial court filed a memorandum denying the motion for summary judgment, which we think was correct.

The case then proceeded to trial. The Judge's relatives testified orally as to the circumstances surrounding the changes in the insurance policies and in the will. The court submitted the case to the jury, charging the jury:

"In order that the issue may be simplified for your consideration the Court with counsel for both sides has formulated a question which you are to answer, and that will be the verdict in the case, and the question which you should consider is as follows:

"Under the complaint of the plaintiffs and the evidence in the case are the plaintiffs entitled to the sum of $5,000 of the proceeds of the life insurance policy in question or are they not? * * *

"There is an issue concerning the intention of this decedent * * *.

"It is important for you to determine that Surrogate Nye intended when that memorandum, that typewritten memorandum which is not initialed or signed by him, was read to him, as stated by the plaintiffs' witnesses, and when they, the witnesses, not Judge Nye, gave that memorandum to Cate with the policy. * * *

"Just what was in Surrogate Nye's mind? Did he mean that by that type- written uninitialed and unsigned paper he then and there changed the beneficiary clause in his existing policy or did he contemplate that there was something else to be done before that change in his own mind would become effective? *That is the critical question in the case for you to decide.*"

The plaintiffs excepted to the issue of intention of Judge Nye being left to the jury as one of fact.

■■ The policy provision which covers changes in beneficiaries is broad and general. To make a change in the beneficiary the insured is merely required to make a "written request" with the return of the policy to the insurance company. It does not require the insured's signature, it does not demand an indorsement upon the policy by the insurance company before the change in beneficiary shall be deemed to have been effected. It merely required a written request accompanying the return of the policy. We are not justified in adding technical requirements not specified in the policy. We are satisfied that the request accompanied by the policy, if the free and intelligent act of the insured, constituted a change in the beneficiaries. Moore v. Moore, 7 Cir., 145 F.2d 580. This conclusion is strengthened by Exhibit 8, if upon a retrial no evidence is offered which impairs or restricts the efficacy of this document.

■ Satisfied that the document, the yellow slip of paper requesting the change of beneficiary was in itself sufficient in law to constitute the written request required by the policy, there remains only the question of fact. Was that request knowingly and intelligently made by the insured? From the record as it now stands, there is little room to doubt that such was his intent and will. Documentary support that such was the fact is disclosed in a letter from the insurance agent to his company, written a couple of weeks after insured's death wherein the agent wrote:

"On my visit first mentioned above I discussed with Mr. Nye the advisability of changing the agreements. He seemed to have decided on the step.

"He had passed away before the settlements prepared at the Home Office could be gotten to him for signature. I am certain they were his *determined* wish and I am hoping his wish can be carried out. * * * I am hoping that his *final wish*

may be honored, for these agreements are more equitable than the old.

"I can say in all sincerity that I am sure, had he been alive to sign the agreements, he would have done so, as he was convinced they were the arrangements he then desired. * * *

"P.S. I am just informed that at the last moment Mr. Nye changed his will along the line of his new idea on the supplementary agreements. I cite this as further evidence that his *avowed purpose* was to make the changes being considered."

The judgment is Reversed with directions to grant a new trial.