(No. 55760.-

VIRGINIA ANN DOOLEY, Appellee, v. JAMES A. DOOLEY ASSOCIATES EMPLOYEES RETIRE-MENT PLAN *et al.*, Appellants.

*Opinion filed October 22, 1982.—Rehearing denied November 24, 1982.*

WARD and MORAN, JJ., took no part.

William J. Harte, of William J. Harte, Ltd., and Myron M. Cherry and Peter Flynn, of Cherry & Flynn, P.C., all of Chicago, for appellants Mary Connelly, Michael Connelly, John D. Connelly, and Lorraine Jensen Grau.

Clare J. Murphy, of Winnetka, and Sidney Z. Karasik, of Chicago, for appellant Herbert Jackson.

Barnabas F. Sears and Wayland B. Cedarquist (Boodell, Sears, Sugrue, Giambalvo & Crowley, of Chicago, of counsel), for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

This is a contest between claimants to the retirement

trust account of the late Justice James A. Dooley (decedent), a former member of this court, who had established the account while engaged in the active practice of law. Decedent had designated plaintiff, Virginia Ann Dooley, his daughter, as the sole beneficiary of that account in December 1973. On February 21, 1978, 12 days before his death, decedent worked on a new designation which named plaintiff and defendants, Mary Connelly, his sister, John D. and Michael Connelly, his nephews, and Hope Jackson and Lorraine Jensen Grau, his former secretaries, as beneficiaries. The issue before us is whether a change of beneficiaries was completed. The circuit court of Cook County held that decedent's notes were ineffective as a change of beneficiaries and did not revoke the 1973 designation of plaintiff, declaring her the sole beneficiary of the account. Defendant claimants appealed and the appellate court affirmed. (100 Ill. App. 3d 389.) We granted leave to appeal.

A detailed factual statement is necessary. In 1962 decedent retained Joseph Reynolds, a CPA, to design and install a retirement plan for James A. Dooley Associates, decedent's law firm. The plan was adopted and installed in 1963 and subsequently amended several times. Reynolds continued to manage the financial aspects of the plan and made annual reports to the participants, whose accounts were individually maintained. Decedent's account was the largest single account, having a value exceeding $3 million at his death. In 1976, when decedent was elected to this court, the plan was amended and a wasting trust was established. Decedent and Reynolds were named as trustees. (Decedent's wife apparently became a trustee after his death.) In 1976, decedent also stepped down as president of James A. Dooley Associates, and his long-time friend and confidant, John Cusack, assumed that position. Decedent moved his office for purposes of winding up his affairs with his former

law firm, and disposed of his practice but continued to maintain some files relating to the trust.

After his death a file folder marked "Dooley Assoc. Retirement Trust (Beneficiary Slips)" and containing beneficiary designations of the participants was found in a locked file in decedent's office. There was no testimony that decedent himself maintained the file. Reynolds testified that he and decedent's secretary handled beneficiary designations. In the file was found decedent's 1973 designation of plaintiff as his beneficiary, a designation of which Reynolds was previously unaware. There were two versions of this designation, which varied slightly in wording. One, dated December 12, 1973, was handwritten and signed. The other, dated December 13, 1973, was typewritten and signed. Both contained a revocation of prior designations as was required by the version of the plan in existence at that time. The plan, however, required neither a typewritten designation nor the participant's signature. Also in the file was a 1963 designation of Virginia P. Dooley, decedent's wife, as beneficiary, which was also typed and signed. The 1973 designation was made shortly after decedent and his wife separated.

Reynolds, who was apparently concerned about adverse tax consequences to a beneficiary paid in a lump sum, testified that he had encouraged decedent for some time to revise his beneficiary designation. In April 1977, decedent met Reynolds and discussed beneficiary changes, stating he wished to leave something to defendants. He made some notes which described specific bequests to plaintiff and defendants, changing the amounts several times, with the residue going to Virginia P. Dooley, his wife. Reynolds objected to specific dollar bequests because, if decedent drew on his retirement account, there might not have been sufficient funds with which to pay them. He also objected to the installment

schedule indicated in the notes because of adverse tax consequences to the beneficiaries. Decedent told him "to work on it."

Reynolds spoke with decedent over the telephone several times subsequently and, in May 1977, wrote him a four-page letter explaining various tax consequences and options. Page two set out a proposed designation and distribution scheme. Basically the proposal followed decedent's notes made in April, the major change being that the specific bequests were converted to percentages.

Decedent apparently took no further action until February 21, 1978. On that date he met Reynolds and John Adams, his tax accountant, to discuss unrelated personal tax matters. However, before those matters were discussed, decedent took Reynolds' May 1977 letter from his desk and began writing on page two. After 10 or 15 minutes he showed it to Reynolds. Decedent had lined out several portions of Reynolds' proposal and had written in his changes. Hope Jackson's and Lorraine Jensen Grau's shares were changed from 3% to 5% and plaintiff's was adjusted accordingly from 66% to 62%. Decedent changed plaintiff's installment schedule from "33⅓% at age 25, 33⅓% at age 30 and the balance at age 35" to "installments over thirty years." Virginia P. Dooley was deleted as contingent beneficiary of plaintiff's share and in her place decedent's nephews were designated as contingent beneficiaries of one-half and decedent's "widow" of the other half. Virginia P. Dooley was also deleted as contingent beneficiary of the shares designated to two nephews and Hope Jackson, with Loyola University of Chicago being substituted. Lorraine Jensen Grau's daughter took Virginia P. Dooley's place as contingent beneficiary of Lorraine's share. In the event that none of the named beneficiaries survived him, Loyola University was named as beneficiary.

After Reynolds read the changes he asked decedent several clarifying questions, determining that a figure was a "2" rather than a "3," that plaintiff's share was to be paid in annual installments, and that the nephews' shares were also to be paid in 30 annual installments. Reynolds made notes in the margin of the page. Then, satisfied he understood what decedent meant, he wrote "Per J. A. D. instructions on 2/21/78" and his initials at the bottom of the page. Reynolds testified that he told decedent that he would put it in "formal style for him to prepare it for his signature." Decedent replied that there was no hurry because "he was more interested in these other matters that I [Reynolds] was there to discuss than he was in finishing this up." On cross-examination Reynolds testified that he believed the corrected notations "embodied Dooley's intent in regard to the distribution of his money in the pension fund." Reynolds placed the letter on a stack of papers and the meeting turned to other matters. During the meeting, decedent's secretary made copies of several documents, but Reynolds did not know if she copied the letter. When he left he took it with him, but Justice Dooley died some 12 days later before Reynolds had it typed.

John Adams testified that he was present at the meeting of February 21 and that he saw decedent make the changes and heard him tell Reynolds what each beneficiary was to receive. Adams testified decedent had asked Reynolds to get the material typed up, telling Reynolds that "there was no rush because we had some other things that he felt were more important to do."

John Cusack, an intimate friend of decedent, testified that he met decedent on February 22, 1978, and that decedent handed him a copy of the letter and notes he had written the day before and told him it was his new beneficiary designation. Cusack stated that he asked if Reynolds had a copy of it and decedent said he had. Cusack

told him that, as president of the company, he considered it a valid designation and he advised decedent to keep it with his other company files. The copy which Cusack said he saw was apparently never found. In rebuttal to this testimony, Reynolds testified that Cusack never mentioned having seen this letter or discussing it with decedent on either of the two occasions on which they met after decedent's death. Some of the defendants were present during at least one of those meetings, and they testified that the letter had been a topic of discussion.

The provision of the plan governing a change of beneficiaries in effect at the time of decedent's death stated:

> "A Participant may designate the beneficiary of his choice to receive payments of amounts credited to his Company Contribution Account, his Employee Contribution Account, if any, and his Rollover Account, if any, at his death. The Beneficiary Designation must be in writing and filed with the Company and may include contingent or successive beneficiaries. A Participant's Beneficiary Designation may be changed at any time or from time to time by the Participant's filing a new Beneficiary Designation form with the Company. The revocation of a beneficiary's designation shall not require the consent of any beneficiary."

As noted earlier, the original plan required that a new designation revoke prior designations, but this language was deleted in 1977 just a few months prior to decedent's death. It does not appear that there was a specific form provided by the company for beneficiary designations. The trustees take a neutral position in this litigation, and the parties have apparently agreed that the new plan required only that a beneficiary designation be "in writing and filed with the Company."

The trial court's written judgment contained no specific findings, but declared that plaintiff was the beneficiary under the valid 1973 designation, which decedent's notations on the letter were ineffective to replace. The court did ren-

der a short oral opinion which in part stated:

"The language of the trust is clear, and it is agreed by the parties that a change in designation of the beneficiary must be in writing, filed with the company.

\*\*\*

While Justice Dooley may have expressed a desire to make changes, he, above anyone else, a brilliant lawyer, a Justice of the Supreme Court of Illinois, knew what was necessary to properly effectuate a change of beneficiary. In fact, he had effected several changes prior thereto.

And, each time he effected a change, each time he made a new designation, it was typewritten, signed and filed in a specific file of the company.

The evidence is uncontradicted that, on February 21, 1978, Justice Dooley took the letter sent to him by Mr. Reynolds on May 21, 1977, relative to proposed distributions in the event of his death from his desk and made some typewritten [*sic*: handwritten] directions on it, crossed out other typed portions and gave it to Mr. Reynolds who, after further discussion with Justice Dooley, made some notes on it and then said he would take it with him, put it in a formal style for him to prepare it for his signature. \*\*\*

I am forced to conclude that, had Justice Dooley felt that he had complied with the requirements to make the changes, he would have responded immediately to that statement differently than he did. You will recall that the response that he made to that statement was, 'Well, there is no hurry about it. There are other things that I am more interested in that you could take care of.'

Justice Dooley knew, in this Court's judgment, that what was done then was not a valid, effectual change of the beneficiary nor did he intend that it take effect at that time. Justice Dooley did not need Mr. Reynolds, nor anyone else, to prepare a change of beneficiary.

If he intended it to take effect at that time, he could have signed it, filed it, or he could have had it retyped, signed it and filed it as he did on several other occasions."

The appellate court held that although under other circumstances decedent's notes could constitute a written des-

ignation and that Reynolds was an appropriate person with whom to file a designation, there was sufficient evidence "to indicate that the alleged 1978 designation had not been finalized by the decedent." (100 Ill. App. 3d 389, 394.) Consequently it held the trial court's conclusion was not against the manifest weight of the evidence. We agree.

In our opinion the crux of this case is whether Justice Dooley regarded the beneficiary changes he noted on the Reynolds' letter as his final, effective decision. If so, there are numerous cases indicating that what was done here sufficed to accomplish a change of beneficiary. Many of the insurance cases, which we consider relevant here, apply explicitly or implicitly, a "substantial compliance with the policy requirements" test in determining whether steps taken by a decedent were sufficient to change the beneficiary. (See, *e.g., Atkinson v. Metropolitan Life Insurance Co.* (1926), 114 Ohio St. 109, 150 N.E. 748; *Connecticut General Life Insurance Co. v. Gulley* (7th Cir. 1982), 668 F.2d 325; *Criscuolo v. United States* (7th Cir. 1956), 239 F.2d 280; *John Hancock Mutual Life Insurance Co. v. Douglass* (7th Cir. 1946), 156 F.2d 367; *Nye v. Mutual Benefit Life Insurance Co.* (2d Cir. 1945), 148 F.2d 509; *Saunders v. Stevers* (1963), 221 Cal. App. 2d 539, 34 Cal. Rptr. 579; *Rindlaub v. Travelers Insurance Co.* (1962), 119 Ohio App. 77, 196 N.E.2d 602, *aff'd* (1963), 175 Ohio St. 303, 194 N.E.2d 577; *Sun Life Assurance Co. of Canada v. Williams* (1936), 284 Ill.App. 222; *Supreme Council of the Royal Arcanum v. Huckins* (1911), 166 Ill. App. 555; *Shenandoah Life Insurance Co. v. Harvey* (D. Md. 1965), 242 F. Supp. 680; *New York Life Insurance Co. v. Lawson* (D. Del. 1955), 134 F. Supp. 63; *Aetna Life Insurance Co. v. Parker* (E.D. Mich. 1955), 130 F. Supp. 97; see also cases cited at Annot., 19 A.L.R.2d 5, 30-41 (1951).) Other cases apply a somewhat stricter test, whether the decedent "did all he could" to effectuate the change. (See, *e.g., Young v. American Standard Life Insurance Co.* (1947),

398 Ill. 565; *Sun Life Assurance Co. of Canada v. Sutter* (1939), 1 Wash. 2d 285, 95 P.2d 1014; *Inter-Southern Life Insurance Co. v. Cochran* (1935), 259 Ky. 677, 83 S.W.2d 11; *Tomaneng v. Reeves* (6th Cir. 1950), 180 F.2d 208; *Logan v. State Farm Life Insurance Co.* (1978), 61 Ill. App. 3d 770, 772; *Donahey v. Sweigart* (1949), 336 Ill. App. 366; *Saiter v. Miller* (1940), 108 Ind. App. 373, 27 N.E.2d 900; *Page v. Page* (E.D. Okla. 1978), 451 F. Supp. 956.) Still others seem to combine the two tests, inquiring whether the decedent did all he could to effect the change in order to determine whether there was substantial compliance with the requirements. See, *e.g., Grayson v. Gilley* (Ky. 1969), 443 S.W.2d 240; *Vaughn v. Baker* (Ky. 1969), 438 S.W.2d 517; *Henderson v. Adams* (1941), 308 Mass. 333, 32 N.E.2d 295; *English v. English* (1977), 34 N.C. App. 193, 237 S.E.2d 555; *Mutual Savings Life Insurance Co. v. Cowan* (E.D. Tenn. 1960), 188 F. Supp. 148.

In most of the reported cases the courts have not discussed the decedent's intent, but have dwelt upon whether he took sufficient steps to effectuate the change. It appears, however, that the overriding concern in these cases, the threshold question, is the firmness of decedent's intent as to the changes. (See, *e.g., Prudential Insurance Co. of America v. Bannister* (W.D. Pa. 1978), 448 F. Supp. 807, 809.) Indeed, where the courts have been convinced that no doubt as to decedent's intent existed, that intent has been implemented despite what would appear to be substantial noncompliance with formal requirements. (See, *e.g., Vaughn v. Baker* (Ky. 1969), 438 S.W.2d 517 (oral request; agent prepared forms but insured did not sign them); *Atkinson v. Metropolitan Life Insurance Co.* (1926), 114 Ohio St. 109, 150 N.E. 748 (agent's letter sufficient); *Criscuolo v. United States* (7th Cir. 1956), 239 F.2d 280 (unsigned note on scratch paper); *English v. English* (1977), 34 N.C. App. 193, 237 S.E.2d 555 (notation on "insurance review form"); *Aetna Life Insurance Co. v.*

*Parker* (E.D. Mich. 1955), 130 F. Supp. 97 (pencilled change on certificate).) However, where factors exist which tend to indicate some equivocation—to cast some doubt upon decedent's intent—the courts have generally held that the decedent did not substantially comply with all requirements, or did not do all he could to effectuate the change, or both. See, *e.g., Young v. American Standard Life Insurance Co.* (1947), 398 Ill. 565 (omission of date and relationship of insured to new beneficiary; form was altered after insured's death; insured specifically requested change to be effective only upon endorsement); *Tomaneng v. Reeves* (6th Cir. 1950), 180 F.2d 208 (insured did not execute forms as he had in the past); *Logan v. State Farm Life Insurance Co.* (1978), 61 Ill. App. 3d 770 (new beneficiary signed forms for insured claiming she had his authority); *Sun Life Assurance Co. of Canada v. Secoy* (N.D. Ohio 1947), 72 F. Supp. 83 (insured wrote several times requesting a change but never returned the company form).

While certainty of intent is essential, it will not suffice without more. There must be a combination of intent to make the change and positive action towards effecting that end.

> "Substantial compliance requires (a) a clear expression of the insured's intention to change beneficiaries, plus (b) his concrete attempt to carry out his intention as far as was reasonably in his power. Intent alone is not sufficient. In addition, the insured must have done all he reasonably could do under the circumstances to carry his intention into execution." 7 Williston, Contracts sec. 916, at 484-85 (3d ed. 1963).

> "The mere fact that the insured takes preliminary steps with the intent of ultimately effecting a change of beneficiary does not in itself constitute substantial compliance and a change of beneficiary does not result therefrom." 5 Couch, Insurance sec. 28:75, at 179 (2d ed. 1960).

Requiring that the evidence establish an unequivocal intent on the insured's part and that he take positive action

to change his beneficiary serves two purposes: doubt as to the intent is eliminated and concrete evidence of that intent is provided the payor. In 5 Couch on Insurance section 28:72, at 175 (2d ed. 1960), it is stated that compliance must be "sufficient to give assurance of the authenticity of the insured's desire to bring about a change and to provide trustworthy evidence of that desire to the insurer." The trustees here occupy a position akin to that of an insurer and they have taken a neutral position, since all of the claimants are before the court. In similar situations defendants have urged that the original beneficiary is not entitled to assert the lack of compliance with formal policy (plan) requirements. (See, *e.g.*, *Sun Life Assurance Co. of Canada v. Sutter* (1939), 1 Wash. 2d 285, 95 P.2d 1014; *Atkinson v. Metropolitan Life Insurance Co.* (1926), 114 Ohio St. 109, 150 N.E. 748; *Prudential Insurance Co. v. Glasgow* (2d Cir. 1953), 208 F.2d 908; cases cited at Annot., 19 A.L.R.2d 5, 101-09 (1951).) What defendants overlook, however, is that such cases generally do not involve any question of decedent's intent to effect the change. The cases are few in which a reviewing court has questioned a trial court's finding that the decedent did not intend a change, and these seem to be distinguishable. (*E.g.,* *Rindlaub v. Travelers Insurance Co.* (1963), 175 Ohio St. 303, 194 N.E.2d 577 (insufficient evidence to support inference drawn by trial court); *Nye v. Mutual Benefit Life Insurance Co.* (2d Cir. 1945), 148 F.2d 509 (improperly excluded evidence required remand for new trial); *English v. English* (1977), 34 N.C. App. 193, 237 S.E.2d 555 (question submitted to trial court on stipulations for ruling on motion for summary judgment did not require finding on intent). The trial court here has held that Justice Dooley did not intend his notations on the Reynolds letter to be effective. We cannot say that holding is contrary to the manifest weight of the evidence.

The evidence here clearly indicates decedent was con-

templating changing beneficiaries and had done some work in that regard. However, the evidence can also be considered as indicating he knew his work was not complete. Clearly decedent contemplated reviewing the typed version before signing it and contemplated signing a document in a form similar to his previous designations. We do not suggest that the plan required either a certain form or a signature, but only that the facts that decedent had signed typewritten designations in the past and contemplated doing so again support a finding that he did not intend what he had done to be effective. Not only had he not done "all he could," he had not done all he contemplated doing.

It seems to us, too, that in contrast to the factual situations in the cases cited by defendants, the evidence here as to decedent's intent is not unequivocal. Some ambivalence was manifest in the dollar apportionments during the 1977 conversation with Reynolds when decedent first fixed the daughter's share at $1 million, then $1.5 million and then $2 million. Some uncertainty is also apparent in the 1978 percentage apportionment where the percentages were altered from those first suggested as paralleling the dollar figures originally fixed by decedent. It is significant, too, that decedent indicated he was in no hurry for the typed version and that there were other more important matters. That statement does not impress us as emanating from one who has reached a final and effective decision which he wishes placed in final form. While it can, perhaps, be argued that this statement may also be interpreted as indicating a belief by decedent that he had completed the beneficiary-changing project and there was no hurry about the formality of a typed, signed form, that interpretation does not square with the absence from the beneficiary-designation file of any reference to this substantial change.

It is also clear that Reynolds could not have typed decedent's notes verbatim in preparing the beneficiary change document. He would have had to interpret and expand

upon those notes to some extent, exercising some discretion in the process, a fact which decedent undoubtedly understood when either decedent or Reynolds suggested that the material be typed up. Too, there is no evidence other than the Cusack testimony that a copy of his notes was retained by decedent, and both the trial and appellate courts appear to have attached little probative value to that testimony in view of the witness' failure to mention, during subsequent discussions, that decedent had shown him the letter. Finally, there is no evidence at all that anything was placed in the file containing all of the beneficiary designations. Had decedent regarded the changes he had noted on Reynolds' letter as then representing an effective designation, it would seem that, had he retained a copy, it would have been placed in the file with the other designations.

The combined effect of these factors, in our judgment, is to demonstrate that a holding that decedent did not regard his notes as representing his final decision or an effective designation of new beneficiaries cannot be said to be contrary to the manifest weight of the evidence, and that the judgment of the appellate court, affirming the circuit court, must be affirmed. *Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 15; *Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110.

*Judgment affirmed.*

WARD and MORAN, JJ., took no part in the consideration or decision of this case.