937 F.2d 1292
 Dorothy RENDLEMAN, Plaintiff-Appellant,
and
Elbert Rendleman, Plaintiff-Cross-Defendant-Appellant,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant,
v.
Tammy L. RENDLEMAN, Cross-Plaintiff-Appellee.
 No. 90-3333.
 United States Court of Appeals,
Seventh Circuit.
 Argued July 9, 1991.
Decided July 30, 1991.
 
 G. Gordon Lambert, Ronald Eckiss, Harris & Lambert, Marion, Ill., for Elbert and Dorothy Rendleman.
 Thomas F. Crosby, G. Patrick Murphy, Winters, Brewster, Murphy, Crosby & Patchett, Marion, Ill., for Tammy L. Rendleman.
 Donald V. Ferrell, Jelliffe, Ferrell & Morris, Harrisburg, Ill., for Metropolitan Life Ins. Co.
 Before CUMMINGS, POSNER, and FLAUM, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Elbert and Dorothy Rendleman appeal from the district court's decision granting summary judgment in favor of Tammy L. Rendleman and awarding her the proceeds of a life insurance policy issued upon the life of their son, Larry Rendleman. Elbert and Dorothy Rendleman maintain that the district court erred in finding that Tammy Rendleman was the named beneficiary under the policy. They argue that Larry Rendleman changed the beneficiary under the policy after he divorced Tammy Rendleman and before his death.
 
 I. Background
 
 2
 In January 1985, Larry Rendleman began working for the Illinois Department of Corrections. At the time of his employment, Larry Rendleman elected to participate in the State Group Life Insurance Program. The record does not reveal who was initially designated as the beneficiary under the policy. However, on May 12, 1986, Larry completed a form entitled "State of Illinois Group Life Insurance Program Beneficiary Designation" naming Tammy Rendleman as his primary beneficiary and Elbert Rendleman, his father, as his contingent beneficiary. Larry and Tammy Rendleman had been married on May 3, 1986.
 
 
 3
 When Larry began his employment, Fort Dearborn Life Insurance Company was under contract with the State to provide the life insurance. That policy expired on June 30, 1987, and the State contracted with Metropolitan Life Insurance Company to provide the life insurance coverage. The Metropolitan policy became effective on July 1, 1987. When the successor policy expired, the State renewed the insurance contract with Metropolitan effective July 1, 1989. The policies provided for changing beneficiaries by filing change of beneficiary forms with the insured's enrolling state agency.
 
 
 4
 In August 1988, Larry and Tammy Rendleman were divorced. Soon after the divorce, Larry Rendleman completed a form which dropped Tammy Rendleman only from the Group Health Insurance Program. However, he did not complete the necessary form to change his beneficiary designation under the life insurance policy. In September or October of 1988, Larry Rendleman happened upon a co-worker and friend, Jeff Hutchinson, in the Visitor's Center of the Shawnee Correctional Center where they were employed. Hutchinson was completing a form to add his son as a beneficiary under his life insurance policy. Larry apparently told Hutchinson that he should probably change his beneficiary designation also, because he did not want his ex-wife to collect his life insurance proceeds after his death. Thereafter, Hutchinson saw Larry walk in the direction of the administration building where he could obtain the necessary form to change his beneficiary and return with some papers in his hand, although Hutchinson did not see what papers Larry was carrying and he did not see Larry complete any forms. They did not have any further discussions about the insurance. In addition, there is no evidence in the record that Larry actually completed and filed the necessary form to change his beneficiary designation in the one-year period between the aforementioned conversation and the date of his death.
 
 
 5
 Larry Rendleman died in an automobile accident on October 1, 1989. At the time of his death, the second policy of insurance with Metropolitan was in effect. Both Tammy Rendleman (the ex-wife) and Dorothy and Elbert Rendleman (the parents) filed claims for the insurance proceeds. The parents filed suit in an Illinois state court to recover the life insurance proceeds. Metropolitan removed the case to federal court on the basis of diversity jurisdiction. Metropolitan filed a counterclaim for interpleader, naming the parents and the ex-wife as the adverse claimants. The ex-wife filed a cross-claim against the parents seeking declaratory relief that she was the beneficiary under the life insurance policy. Metropolitan then deposited the policy proceeds of $186,000.00 with the court and was dismissed from the suit. The parties consented to final disposition by a magistrate judge. The adverse claimants filed cross motions for summary judgment. The magistrate judge entered summary judgment in favor of the ex-wife and the parents filed this appeal.
 
 II. Analysis
 A. Beneficiary Designation
 
 6
 Initially, the parents argue that the form designating Tammy Rendleman as the beneficiary under the life insurance policy was invalid, because it was executed when another policy with a different insurance carrier was in effect. They maintain that because the successor policy did not incorporate the prior designation form and because it contained language that it represented the entire agreement between the parties, there was no valid designation of beneficiary during the effective dates of the policy and therefore, the proceeds are payable to them under the default provision of the policy. The ex-wife counters that the beneficiary designation form completed in 1986 retained its validity despite the fact that the company that supplied the life insurance coverage had changed. As such, she argues that the district court properly entered summary judgment in her favor.
 
 
 7
 None of the parties cite any authority for their conflicting arguments with respect to the continuing validity of a beneficiary designation under a group life insurance policy where the provider is changed. Our own research has found only a few cases that have addressed the question. In Davis v. Travelers Ins. Co., 196 N.W.2d 526 (Iowa 1972), the Iowa Supreme Court did face the issue now before us on appeal. In Davis, the decedent became an employee of the Pepsi-Cola General Bottlers in 1963 and as such, was covered under a group life insurance policy issued by the Travelers. In 1963, the decedent had executed a designation of beneficiary form naming his then wife as his beneficiary. Thereafter, the insured and his wife (the named beneficiary) were divorced and the insured remarried.
 
 
 8
 At some point prior to the insured's death, Pepsi and the Travelers renegotiated the insurance and a successor policy with substantially the same provisions was issued. The successor policy was in effect at the time of the insured's death. Both the ex-wife and the widow, as the executor of her late husband's estate, filed claims for the insurance proceeds. The executor argued that the two different policies of insurance required independent beneficiary designations in order to be effective. The Davis court affirmed an entry of summary judgment which rejected that argument. The court noted that the designation of beneficiary card did not make reference to effective dates of the policy. In addition, the court emphasized that the successor policy was merely a replacement policy under which the coverage was to remain constant. " 'Where the renewal agreement so recites, or unless it provides otherwise, the terms and conditions of the existing policy are not changed, enlarged, or restricted by a renewal but are merely continued in force as binding on the parties; and an agreement to renew, in the absence of expression to the contrary, is presumed to contemplate the same terms and conditions as the existing insurance, the only change being the time of its expiration.' " Davis, 196 N.W.2d at 530 (quoting 44 C.J.S. Insurance Sec. 285). As such, the court concluded that the beneficiary designation completed prior to the effective date of the policy in force at the time of death operated to direct payment to the decedent's ex-wife. Contra; Taylor v. Harrison, 445 S.W.2d 270 (Tx.Ct.App.1969) and Leath v. Tillery, 424 S.W.2d 505 (Tx.Ct.App.1968) (designation of a beneficiary under one policy was not effective for a subsequent and different policy).
 
 
 9
 In Cox v. Employers Ins. Co. of Wausau, 25 Ill.App.3d 12, 322 N.E.2d 555 (5th Dist.1975), the Appellate Court of Illinois gave effect to a beneficiary designation card that had been completed while a predecessor policy was in force and reversed a decision awarding the insurance proceeds to the administrator of the decedent's estate instead of the decedent's ex-wife, the named beneficiary. The Cox court noted that the insurance policy provided that the insured could designate or change a beneficiary by filling out a form and giving it to the employer. The policy further provided that the beneficiary designation became effective upon date of receipt of the form by the employer. The insurance company left the function of recording the beneficiary with the employer and did not require that it either acknowledge or approve the designated beneficiary under the policy. The Cox court therefore concluded that the completion of the enrollment card naming the ex-wife as the beneficiary, which corresponded to the initial policy of insurance, was sufficient to constitute a designation of beneficiary for the policy in effect at the time of death. However, the court tied its decision in part to the fact that the two insurance companies providing the group insurance policies had a parent-subsidiary relationship and therefore, the successor company could be charged with knowledge of the beneficiary designation form of the predecessor company.
 
 
 10
 The rationale of Cox and Davis is controlling in this instance, even though the insurance companies that provided the insurance in this case were not related entities. The policy provisions in this instance establish that the required documents for naming, changing, or adding a beneficiary were located with the employer. In addition, the employer maintained the record-keeping function under each policy. The beneficiary designation became effective when it was delivered to the employer, and the insurance company had no requirement that it even be advised of the beneficiary until a claim was made. As the appellee ex-wife argues, there is nothing in the policy to suggest that a prior designation became ineffective when the group life insurance carrier was changed. In fact, the policy language refers to the "designated beneficiary." The use of that language lends support to the proposition that the policy presupposes that a beneficiary designation be made before the effective date of the policy. Thus the ex-wife remained the designated beneficiary.
 
 
 11
 The conclusion that the beneficiary designation is continuing in nature and is not canceled as a result of the change in carriers is strengthened by the fact that here the original enrollment form is handled in the same manner as the beneficiary designation form, in that the employer retains possession of the form and uses it to obtain from the insurance company the type of coverage an employee has selected. The logical conclusion to draw from the State's handling of the enrollment and beneficiary designation forms is that the employee makes a determination as to his choice of coverage and his beneficiary, and thereafter the State contracts with an insurance company to provide the desired coverage at the best price. If prior beneficiary designations were revoked each time the State switched insurance carriers, the group life insurance program would be thrown into a state of unnecessary upheaval. In Cox, the Appellate Court of Illinois emphasized that the original intent of the insured would be controlling barring a proper new designation. The procedures used for enrolling and designating beneficiaries in Rendleman's case show that the employees, the employer, and the insurance companies contemplated a situation where the beneficiary designation would be ongoing unless the insured changed the named beneficiary form. As intended by this set-up, a court should give effect to the last beneficiary designation form. There was no error in the magistrate judge's determination that Tammy Rendleman was the only designated beneficiary under the policy at issue and as such was entitled to the proceeds.
 
 B. Change of Beneficiary
 
 12
 The parents argue in the alternative that the decedent effectively revoked his beneficiary designation prior to his death and thus, they argue that the proceeds pass to them pursuant to the default provision of the policy. To change a beneficiary, the policy provided the following instructions to the insured:
 
 
 13
 If you desire to change a named beneficiary, add a beneficiary, or change the address of a beneficiary, you must inform your Group Insurance Representative at your enrolling agency or retirement system, and request that the change be made. You will be given a new Beneficiary Designation Form which you should complete. It is your responsibility to ensure that the beneficiary designation is current. The Beneficiary Designation Form is not effective unless signed by you and is on file with the agency or retirement system at the time of your death.
 
 
 14
 The parents argue that the action taken by the decedent prior to his death in telling Jeff Hutchinson that he did not want his ex-wife to collect his life insurance and in obtaining the necessary change of beneficiary form was sufficient to remove her as a beneficiary under the policy. The parents argue that the decedent clearly expressed his intent to change his beneficiary and took sufficient steps to effectuate the change even though he never completed the requisite change of beneficiary form. In Travelers Ins. Co. v. Smith, 106 Ill.App.3d 318, 62 Ill.Dec. 216, 435 N.E.2d 1188 (1st Dist.1982), the Appellate Court of Illinois noted that in cases such as the one at bar where an interpleader action is filed, the insurance company waives strict compliance with the terms of the policy dictating the procedure for changing a beneficiary. Id. at 320, 62 Ill.Dec. at 218, 435 N.E.2d at 1190. Nevertheless, the court also noted that "[o]bviously before the designation can be changed, the insured must intend to change the beneficiary. But mere intent is not enough; there must be at least some overt act evidencing this intent." Id. Similarly, in Dooley v. James A. Dooley Associates Employees Retirement Plan, 92 Ill.2d 476, 65 Ill.Dec. 911, 442 N.E.2d 222 (1982), the Illinois Supreme Court stated
 
 
 15
 While certainty of intent is essential, it will not suffice without more. There must be a combination of intent to make the change and positive action towards effecting that end.
 
 
 16
 "Substantial compliance requires (a) a clear expression of the insured's intention to change beneficiaries, plus (b) his concrete attempt to carry out his intention as far as was reasonably in his power. Intent alone is not sufficient. In addition, the insured must have done all he reasonably could do under the circumstances to carry his intention into execution."
 
 
 17
 Id. at 486, 65 Ill.Dec. at 916, 442 N.E.2d at 227 (quoting 7 Williston, Contracts Sec. 916, at 484-85 (3d ed. 1963)). Here the decedent plainly did not do "all he reasonably could do under the circumstances to carry his intention into execution."
 
 
 18
 In Connecticut General Life Ins. Co. v. Gulley, 668 F.2d 325 (7th Cir.1982), this Court placed the Illinois cases concerning substantial compliance with the policy provisions for changing an insurance beneficiary in two categories: those where the insured took a number of positive steps to change the beneficiary but was not in strict compliance with the policy requirements, and those cases where the insured took virtually no steps to implement the change. The Gulley court noted that in the second category of cases "[t]ypically, the only evidence of an attempted change was an oral statement by the insured that he intended to change the beneficiary of his insurance policy. Although recognizing that strict compliance with the terms of the policy is not essential, the courts have required more concrete evidence of intent in order to effect a change of beneficiary." 668 F.2d at 327.
 
 
 19
 The case before us resembles more nearly the second category of cases recognized by this Court in Gulley. The only evidence in the record reflects that the decedent came upon a co-worker, Jeff Hutchinson, at the prison and discovered that Hutchinson was adding a beneficiary to his life insurance policy. The decedent told Hutchinson that he was going to have to change his beneficiary as well because he did not want his ex-wife to collect the proceeds of the policy upon his death. Thereafter, the decedent left the visitors center and walked in the direction of the administration building, where he would have been able to pick up the form to change his beneficiary designation. Within a few minutes, the decedent returned to the visitors center with some papers in his hand. Hutchinson passed him in the doorway, but Hutchinson did not see what kind of papers the decedent was carrying nor did he see the decedent complete any such form. There is no evidence that the beneficiary designation form was ever completed or returned to the employer at any time during the nearly one-year period between the conversation with Hutchinson and the decedent's death. Finally, although the record reflects that the decedent dropped his ex-wife from the group health insurance policy, it also shows that he was aware of the necessary procedure for effectuating a change in his life insurance coverage and simply failed to do so. Even though the decedent expressed his intent to remove his ex-wife as the life insurance beneficiary, he did not carry out his intention. As such, we hold that the district court properly entered summary judgment in favor of the decedent's ex-wife, since there was no revocation of the prior beneficiary designation.
 
 III. Conclusion
 
 20
 The district court properly determined that a beneficiary designation form naming the ex-wife as the beneficiary executed during the pendency of a different life insurance policy than the one in effect at the date of death retained its validity and operated to direct payment of the policy proceeds to Tammy Rendleman. There was insufficient evidence of concrete action taken by the insured to effectuate his expressed intent to change his beneficiary to support his parents' argument that he revoked his primary beneficiary designation. Therefore, the decision of the district court granting summary judgment in favor of Tammy Rendleman and awarding her the policy proceeds is AFFIRMED.