**AETNA LIFE INSURANCE COMPANY, a Connecticut Corporation, Plaintiff,**

v.

**Lori A. WISE, formerly known as Lori A. Broccardo, also known as Lori A. Harrison, Defendant—Cross–Claimant—Appellant,**

v.

**James E. Broccardo, Sr., Sandra K. Broccardo, and Alfred B. Labarre, as Special Administrator of the Estate of James E. Broccardo, Jr., Defendants—Cross–Defendants—Appellees.**

No. 98–1579.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1998.

Decided July 8, 1999.

Thomas H. Wilson (argued), Sorling, Northrup, Hanna, Cullen & Cochran, Springfield, IL, for Defendant-Appellant.

Timothy E. Duggan (argued), Springfield, IL, for Defendants-Appellees.

Before COFFEY, RIPPLE and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

On October 28, 1986, James E. Broccardo, Jr. ("Broccardo"), enrolled in an Aetna Life Insurance plan offered by his employer, Bell & Howell Mail Processing Systems Company ("Bell & Howell"). Broccardo named his wife, Tanya Broccardo ("Tanya"), as beneficiary of the proceeds on his life insurance policy. On October 15, 1988, Broccardo and Tanya divorced, and more than three years later, on January 17, 1992, Broccardo was married to the appellant, Lori Wise ("Wise"). Broccardo altered the beneficiary election in his insurance policy and named Wise as the beneficiary of the proceeds. Broccardo later divorced Wise on July 5, 1994, and one and one-half years later committed suicide on December 5, 1995. Nonetheless, on December 15, 1995, Wise was notified by Bell & Howell that she was the designated beneficiary of Broccardo's life insurance policy. In response, Broccardo's parents, the appellees Mr. and Mrs. James E. Broccardo, Sr. ("parents"), asserted a claim to Broccardo's life insurance benefits. On May 14, 1996, Aetna Life Insurance Company ("Aetna") filed an interpleader action in the United States District Court for the Central District of Illinois and requested that the court designate the proper beneficiary of the $107,000 policy. The case was tried before a jury on January 27–29, 1998. Wise filed two motions for judgment as a matter of law, one at the close of Broccardo's parents' case and a second at the close of all the evidence, both of which were denied. After the jury returned a verdict in favor of Broccardo's parents, Wise filed an additional motion for judgment as a matter of law as well as a motion for a new trial, and both motions were denied. Wise appealed. We affirm.

## I. BACKGROUND

On July 28, 1986, Broccardo began working for Bell & Howell, a manufacturer

of mail processing equipment headquartered in Skokie, Illinois. During his period of employment of some nine years, Broccardo worked as a "field employee," servicing Bell & Howell equipment at post offices throughout central Illinois. As a new Bell & Howell employee, Broccardo was entitled to enroll in his employer's life insurance plan, provided by Aetna. Three months after the commencement of his employment, Broccardo completed a one page enrollment form, selecting the type and amount of life insurance coverage he desired. Broccardo was also required to designate one or more beneficiaries of his life insurance policy. Since Broccardo was married to Tanya at the time he enrolled in the life insurance plan, he designated his wife as the sole beneficiary of his policy and selected life insurance coverage equal to his annual salary.

Each calendar year, Bell & Howell holds an "open enrollment" period during which an employee may change his or her life insurance coverage by increasing or decreasing the amount of insurance benefits or changing beneficiaries. During the annual open enrollment period, enrollment forms are mailed to employees at their home addresses. If an employee fails to return the completed form by the specified deadline, any prior selections as to level of insurance coverage and beneficiary elections remain unchanged for the following year. Employees may also change their life insurance coverage at any time during the year after a change in family status, such as marriage, divorce, or birth of a child. In such a circumstance, the employee must complete a new copy of the annual enrollment form within thirty days from the date of the change in family status.

On October 15, 1988, Broccardo and Tanya divorced. Within thirty days of the completion of the divorce proceedings, Broccardo had altered his life insurance coverage to reflect that Tanya was no longer the beneficiary of his policy and had instead substituted his parents as beneficiaries. Broccardo failed to complete annual enrollment forms for the period August 1, 1989, through December 31, 1990, and therefore, in accordance with Aetna policy, his level of life insurance coverage and beneficiary elections remained unchanged for this period. During the following two years, Broccardo filed enrollment forms, but made no changes in his level of insurance and beneficiary elections.

On January 17, 1992, Broccardo entered into his second marriage, wedding the appellant Wise. As a result of Broccardo's change in family status, on January 20, 1992, Broccardo alerted Bell & Howell that he wished to alter his life insurance coverage. Broccardo received an enrollment form from Bell & Howell which contained a number of "X"s next to the various parts of the form that Broccardo was required to complete. Broccardo increased his life insurance coverage to a sum equal to twice his annual salary and designated his new wife, the appellant Wise, as his beneficiary. Broccardo's total life insurance coverage amounted to $36,000 in term life benefits and $71,000 in supplemental term life benefits, for a total of $107,000. The following year, calendar year 1993, Broccardo failed to file an enrollment form, and thus his benefits remained unchanged. Finally, in calendar year 1994, Broccardo filed an enrollment form, but made no changes in his life insurance coverage.

On July 5, 1994, Broccardo and the appellant Wise, his second wife, were divorced in Sangamon County, Illinois. Broccardo informed Bell & Howell of his divorce and two days later received a cover letter, an enrollment form, and a verification of divorce. The cover letter provided: "You recently advised us of your marital status change. In order to remove your spouse from your insurance coverages, please complete all areas marked 'X' on the enclosed ... Form." The form contained a number of "X"s next to various parts, but *not next to the beneficiary designation portion.* In filling out the form, Broccardo wrote "keep same as be-

fore" next to his level of life insurance coverage, but left the beneficiary designation portion, which was not marked with an "X," blank.

On December 4, 1995, Broccardo met with a local attorney to prepare a will leaving all his assets to his parents. During the meeting, Broccardo drafted the will with his attorney and scheduled a return meeting so he could review the will and execute it. The following day, on December 5, 1995, Broccardo committed suicide and left a suicide note addressed to his parents stating that he was leaving them "everything," including "$85,000 worth of life insurance through Bell & Howell." Bell & Howell was notified of Broccardo's death, and an employee in the human resources department reviewed Broccardo's annual enrollment forms. Based on the contents of Broccardo's file, as well as Broccardo's enrollment form for calendar year 1992, the last form with any changes in beneficiary election, Bell & Howell contacted the appellant Wise and informed her that she was the beneficiary of Broccardo's life insurance policy. In response, Broccardo's parents asserted a claim to their son's benefits, and Aetna commenced an interpleader action in the United States District Court for the Central District of Illinois, requesting that the court determine the identity of the proper beneficiary. The case was tried before a jury on January 27–29, 1998. Wise filed two motions for judgment as a matter of law, the first at the close of Broccardo's parents' case and the second at the close of all the evidence, both of which were denied. The jury returned a verdict in favor of Broccardo's parents, and Wise filed an additional motion for judgment as a matter of law and a motion for a new trial, both of which were denied.

## II. ISSUES

On appeal, we consider whether the trial court erred: (1) in denying Wise's motions for judgment as a matter of law; and (2) in admitting Broccardo's suicide note into evidence.

## III. DISCUSSION

■ The appellant Wise contends that, as a matter of law, the evidence establishes that Broccardo did not substantially comply with the insurance policy's requirements for changing beneficiaries. Wise argues that even working under the assumption that the jury could find that Broccardo clearly intended to change beneficiaries, a fact that neither party disputes on appeal, "he did not do all he reasonably could do under the circumstances to make that change effective." The appellant Wise concludes that Broccardo did not comply with "the most basic requirements for a change of beneficiary" by failing to write in the names of his parents on the 1994 enrollment form. In response, Broccardo's parents claim that their son was confused by the instructions sent with the form. They assert that "Mr. Broccardo, Jr. did all he reasonably could do under the circumstances to carry his intention into execution." In denying the appellant's motion for judgment as a matter of law, the trial court ruled that "[q]uestions as to the effectiveness of a change of beneficiary are generally for the jury." On appeal, we review the trial court's consideration of a motion for judgment as a matter of law *de novo*. *See Fleming v. County of Kane*, 898 F.2d 553, 559 (7th Cir.1990) (citations omitted).

■ For a change of beneficiary to be effective, the party asserting that a change has occurred must establish: (1) the certainty of the insured's intent to change his beneficiary, *see Dooley v. James A. Dooley Assoc. Employees Retirement Plan*, 92 Ill.2d 476, 486, 65 Ill.Dec. 911, 442 N.E.2d 222, 227 (1982); and (2) that the insured did everything he could have reasonably done under the circumstances to carry out his intention to change the beneficiary. *See id.* The memo attached to the 1994 enrollment form instructed Broccardo to "complete all the areas marked 'X' on the

enclosed ... [e]nrollment form" in order to remove his second spouse, the appellant Wise, from his insurance coverage. Broccardo's parents claim that their son reasonably followed the instructions to remove his former wife as the beneficiary of his life insurance policy and that he failed to name his parents as beneficiaries because there was not an "X" next to the beneficiary designation portion of the 1994 form.

This Court has previously held that when an insured has done everything within his power to effectuate a change in life insurance policy beneficiaries, exact compliance with the terms of the policy is not necessary. *See Conn. Gen. Life Ins. Co. v. Gulley*, 668 F.2d 325, 327 (7th Cir. 1982) (citation omitted). Illinois law provides that technical requirements will not defeat the clear and manifested intention of an insured to change a beneficiary designation; instead the court of equity will seek to do that which the insured apparently intended to have done if substantial compliance is proven. *See Travelers Ins. Co. v. Smith*, 106 Ill.App.3d 318, 321, 62 Ill.Dec. 216, 435 N.E.2d 1188, 1190 (1982). In the case under consideration, neither party disputes the fact that Broccardo did not comply with each and every technical requirement to achieve a change in beneficiary. However, it is obvious from the record that Broccardo did take a number of steps to effectuate a change. He was divorced on July 5, 1994, and communicated this fact to the Bell & Howell human resources department within two days. He obtained from Bell & Howell, completed, and returned the proper change in beneficiary form. The memo attached to the 1994 enrollment form instructed the insured to "complete all the areas marked 'X' on the enclosed ... [e]nrollment form," and Broccardo completed all the sections marked with an "X." There were ten "X"s to the left of the areas Broccardo was to complete. However, the beneficiary designation portion, a copy of which was received in evidence, did not have an "X"

next to it, and thus Broccardo did not believe that he was required to fill out this section. Additionally, two and one-half years had passed since Broccardo had last filled out the beneficiary designation section. Broccardo's file also contained two other completed beneficiary designation forms he had received from the company following his divorce, for Bell & Howell's profit and gain-sharing programs, naming his parents as the sole beneficiaries. Moreover, the human resources supervisor at Bell & Howell testified that her office changed the beneficiary designation forms in 1996, combining all beneficiary designations onto one form because "it was confusing with the number of different forms that we had ...." Under *Dooley*, the confusing circumstances in this case lead us to the conclusion that Broccardo did everything he could have reasonably done to carry out his intention to change the beneficiary. This conclusion conforms with the general policy "that [w]here insured takes a positive action which evidences his obvious desire ... the courts will adopt such construction as will assist in carrying out such intention." *Gulley*, 668 F.2d at 328 (internal quotation marks and citations omitted). We are of the opinion that Broccardo's clear intention was to leave "everything" to his parents as evidenced by his suicide note and unexecuted will. *See also State Employees' Retirement System of Ill. v. Taylor*, 131 Ill.App.3d 997, 1000, 87 Ill.Dec. 47, 476 N.E.2d 749, 751 (3d Dist. 1985) (technical compliance with insurance requirements was only for insurance company protection and should not be used to defeat clear and manifested intention of the insured).

Contrast the circumstance in this case with that in *Rendleman v. Metropolitan Life Ins. Co.*, 937 F.2d 1292, 1296 (7th Cir.1991), which the appellant Wise unavailingly relies on to demonstrate that the trial court improperly denied her motions for judgment as a matter of law. In *Rendleman*, though, the insured apparently told a friend he should probably change his beneficiary designation to reflect his re-

cent divorce from his wife, it was unclear whether the insured ever obtained the proper forms to do so. *See id.* at 1294. Furthermore, in *Rendleman,* the insured died before he completed or sent the change of beneficiary form to his employer. *See id.* The *Rendleman* court concluded that the insured did not do all he reasonably could under the circumstances to effect any intention. *See id.* The insurance policy required that a change of beneficiary form be filed with the insured's employer; the insured's action, which amounted to nothing more than an oral representation, fell short. *See id.* By contrast, in the case under consideration, Broccardo obtained the proper forms from Bell & Howell, completed them as directed by the human resources department (filling out each part of the form marked with an "X"), and submitted them to his employer. Such actions amount to a clear expression of Broccardo's intent and go further than the oral representation at issue in *Rendleman.* Additionally, the appellant Wise relies on the court's determination in *Young v. American Standard Life Ins. Co.,* 398 Ill. 565, 76 N.E.2d 501 (1948). In *Young,* the insurance company received the insured's undated beneficiary designation form naming his fiancée as his beneficiary three hours after the insured's death. *See id.,* 398 Ill. at 569, 76 N.E.2d at 503. However, the insurance policy required that the beneficiary designation be dated and transmitted through the insured's union. *See id.,* 398 Ill. at 567, 76 N.E.2d at 502. In ruling that substantial compliance was lacking, the court emphasized that it could not determine if the form was executed before or after the designation on file, and it was unclear who submitted the form to the insurance company. *See id.,* 398 Ill. at 569, 76 N.E.2d at 503. Again, in the case under consideration, Broccardo's designation was clearly completed before his death and was submitted to Bell & Howell by Broccardo himself.

The cases the appellant Wise relies on are inapposite to the factual circumstance under consideration. Broccardo's parents established their son's intent to change beneficiaries, and Broccardo did "everything within his power" to clearly manifest his intent to change beneficiaries, including obtaining the proper forms from Bell & Howell, completing the forms as directed, and returning the forms to his employer. *Gulley,* 668 F.2d at 327. Further, the suicide note and Broccardo's beneficiary elections in the profit and gain-sharing plans are evidence of his clear intent.

■ We next consider whether the trial court erred in admitting Broccardo's suicide note into evidence. The district court received in evidence Broccardo's suicide note stating that he was "leaving everything" to his parents, including the "life insurance through Bell & Howell." Wise contends that the suicide note was hearsay, as it was introduced for the purpose of establishing Broccardo's belief that he had changed the beneficiary of his life insurance from his former wife to his parents. Specifically, Wise contends that the note was hearsay because Fed.R.Evid. 803(3) does not allow the admission of an out of court statement of belief to prove a fact remembered. Broccardo's parents respond that the statement was not offered to prove a fact remembered. In allowing the introduction of the note at trial, the trial court ruled that it was not hearsay "because it was offered, not for its truth, but to prove the intent of the decedent." Furthermore, the trial judge administered a limiting instruction confining the jury's consideration of the note to the issue of Broccardo's intention. Because the district court has broad discretion in determining the admissibility of evidence, we review the district judge's rulings on the admission of evidence for an abuse of discretion. *United States v. Payne,* 102 F.3d 289, 294 (7th Cir.1996).

■ Neither party contends that Broccardo fully and completely executed a proper change of beneficiary designation removing his former wife and naming his

parents. However, Broccardo's suicide note states that he effectively executed a proper change of beneficiary. Thus, although the appellant argues that the note could have been offered by Broccardo's parents to prove that their son had left his life insurance benefits to them, we agree with the trial court's ruling that the note was offered to further establish that Broccardo believed he had taken the proper steps to accomplish his intention, and that ruling is entitled to broad discretion. *See id.* Broccardo's belief is evidence of his intent to make the beneficiary change and that his intent had not changed. The fact finder in this case was not required to determine whether the statement was true or false, only to recognize that the statement was made. Thus, we agree with the trial judge's determination that because the note was not offered to prove the truth of the matter asserted (that Broccardo had in fact made the proper change), the note is not hearsay. The note was properly admitted by the trial court.

## IV. CONCLUSION

The trial court did not err in denying Wise's motions for judgment as a matter of law because the evidence at trial demonstrated that Broccardo did all he reasonably could do under the circumstances to effectuate his clearly expressed intent to change his beneficiary election from his former wife to his parents. Furthermore, we are of the opinion that the trial court did not err in admitting Broccardo's suicide note into evidence; the note was not hearsay since it was not offered at trial for the truth of the matter asserted.

AFFIRMED.