Frances **HARPOLE** and Heather Sadler Plaintiffs

v.

**ENTERGY ARKANSAS, INC. and T. ROWE PRICE RETIREMENT PLAN SERVICES, INC. Defendants**

No. 4:99CV00433 SMR.

United States District Court,
E.D. Arkansas,
Western Division.

March 26, 2002.

Mary Christina Boyd, Boyd & Buie, De-Witt, AR, Luther O'Neal Sutter, Harrill & Sutter, P.L.L.C., Little Rock, AR, for plaintiffs.

Daniel Lee Herrington, Friday, Eldredge & Clark, Little Rock, AR, for defendants.

### ORDER

STEPHEN M. REASONER, District Judge.

Pending before this Court is Plaintiff's Motion For Summary Judgment (Doc. No. 46) to which both defendants filed responses. Also pending before this Court is the Motion For Summary Judgment (Doc. No. 56) of Defendant T. Rowe Price Retirement Plan Services, Inc. (Defendant Price) to which Plaintiff did not respond. For the reasons stated below, Plaintiff's motion is DENIED and Defendant Price's motion is GRANTED.

### FACTS

James Harpole, Plaintiff Frances Harpole's now-deceased ex-husband, was a former participant in the Entergy Corporation Savings Plan (the Plan). The Plan is subject to and governed by the provisions of ERISA codified at 29 U.S.C. § 1001 et. seq. The Plan also contains a Louisiana choice of law provision. See Defendant Price's Supplemental Exhibits (Doc. No. 62), Exhibit 2, p. 37. The purpose of the Plan is to provide Entergy's employees an opportunity to further their financial independence and provide for their future needs. See id. at 1. The Plan documents give the Entergy Employee Benefits Committee (the Committee), as Plan Administrator, the power to interpret the Plan in its "sole and exclusive discretion." See id. at 33. The Committee's power expressly includes the discretion to "construe and interpret the Plan, including the intent of the Plan and any ambiguous, disputed or doubtful provisions of the Plan." See id. Furthermore, the Committee has the power to "resolve all questions concerning the eligibility for benefits under the Plan," and to compute the amount of benefits payable to participants or beneficiaries under the Plan. See id. The Plan instrument also declares that "all decisions of the Committee of any type, including the interpretation or construction of the Plan, shall be final and binding on all parties and shall not be disturbed unless the Committee's decisions are arbitrary and capricious." See id. at 34.

The Plan defines Beneficiary as "the person or persons designated by a[n] [employee] to whom distribution of his interest in the Trust shall be made in the event of his death prior to the full receipt thereof." See id. at 2. Beneficiaries can be changed at any time by meeting the requirement that "[t]he affirmative designation of any Beneficiary and any elected change or revocation thereof by a Member shall be made on forms provided by the Committee and shall not in any event be effective unless and until filed with the Committee." See id.

The Committee is also empowered "to designate one or more persons (other than members of the Committee) to carry out its responsibilities ...." See id. at 33–34. In accordance with this power, the Com-

mittee entered into an agreement with Defendant Price "to perform certain record keeping and other ministerial services." *See* Defendant Price's Supplemental Exhibits (Doc. No. 62), Exhibit 1, p. 1. It is clear from the agreement that Defendant Price's duties did not include those of Administrator, as those duties were specifically excepted. *See id.* at 18, 19. As part of its record keeping duties, Defendant Price is responsible for "Beneficiary Maintenance." *See id.* at 5. "On receipt of a beneficiary designation form, [Defendant] Price will review such a form for completeness and will notify the [participant] of any missing information. Upon receipt of such forms, [Defendant] Price will enter the beneficiary information into the record keeping system and will maintain the original beneficiary designation form in the [participants'] files." *See id.*

As a participant in the Plan, Mr. Harpole and/or his designated beneficiaries were entitled to certain 401–K and pension benefits. It is the claim for those benefits which gives rise to the current action. Plaintiff Frances Harpole is the former wife of James Harpole. Plaintiff Heather Sadler was the step-daughter of James Harpole. Frances and James Harpole were divorced pursuant to an order entered by the Chancery Court of Arkansas County, Arkansas on February 11, 1998. Included in the divorce decree was the following provision: "Husband shall have as his separate property, free from any claim of wife, . . . all of his interest in any savings, retirement or pension plan, including but not limited to his 401–K plan and his retirement plan with Entergy . . . ." There was no Qualified Domestic

Relations Order [1] entered in the divorce proceedings.

On March 20, 1998, Mr. Harpole submitted a beneficiary designation change form designating his son, Michael Harpole, as the sole beneficiary of the Plan benefits which would have terminated Plaintiffs' status as beneficiaries. *See* Defendant Price's Motion For Summary Judgment (Doc. No. 56), Exhibit 3. Mr. Harpole failed to include his son's social security number on the form. *See id.* Defendant Price sent Mr. Harpole a form letter advising him that he had failed to include his son's social security number and, therefore, the beneficiary designation change form could not be "processed" until the social security number was provided. *See* Defendant Price's Motion For Summary Judgment (Doc. No. 56), Exhibit 4. Mr. Harpole was killed in a car accident on May 13, 1998. At the time of his death Mr. Harpole had not provided his son's social security number to Defendant Price.

Defendant Price determined, based on the information it had on file, that Michael Harpole was the beneficiary of the Plan. As the beneficiary, he was paid the Plan assets. Upon learning of this determination, Plaintiffs filed suit against the Committee and Defendant Price alleging that they were entitled to the Plan assets. On September 29, 2000, this Court ordered (Doc. No. 36) that this action be administratively terminated because Plaintiffs had not exhausted their administrative remedies as required by ERISA.

In the course of the subsequent administrative proceedings, Plaintiffs relied on two theories of recovery: first, that the ab-

---

1. Ark.Code Ann. § 9–18–101(3). A Qualified Domestic Relations Order (QDRO) is an order which recognizes the existence of an alternate payee's right to receive all or a portion of the benefits payable with respect to a participant's retirement plan. *See id.* A QDRO is an exception to the anti-alienation provisions of ERISA. *See* 29 U.S.C. § 1056(d). Neither of these provisions are concerned with a change in the death beneficiary, who, by definition, has no vested rights in the Plan.

sence of a Qualified Domestic Relations Order invalidated Mr. Harpole's attempted beneficiary change; and, second, that Mr. Harpole's failure to include his son's social security number invalidated the beneficiary change form submitted by Mr. Harpole. *See* Defendant Price's Motion For Summary Judgment (Doc. No. 56), Exhibit 2. The Committee considered these arguments, rejected them, and decided that Defendant Price had correctly paid Michael Harpole as the named beneficiary of the Plan benefits. *See* Defendant Price's Motion For Summary Judgment, Exhibit 2. Having exhausted their administrative remedies, Plaintiffs moved to reopen this case essentially alleging that they were entitled to relief under 29 U.S.C. § 1132(a)(1)(B) because the Committee incorrectly rejected their aforementioned arguments and alleging that Defendants breached their fiduciary duties. The case was reopened (Doc. No. 45) on May 29, 2001, and the pending motions were filed thereafter.

## ANALYSIS

■ This Court will first address the claim of breach of fiduciary duty. Any person who breaches his fiduciary duty to a plan can be held liable for that breach. *See* 29 U.S.C. § 1109(a). A civil action may be brought by a participant for a breach of fiduciary duty. *See* 29 U.S.C. § 1132(a)(2). However, an action for breach of fiduciary duty under § 1132(a)(2) and § 1109(a) may only be brought to obtain relief for the plan itself. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). There is no private cause of action under § 1109. *See id* at 148, 105 S.Ct. 3085. *See also Wald v. Southwestern Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1006 (8th Cir.1996) (holding that, under *Russell,* a plaintiff has no individual cause of action under § 1132(a)(2)). In this case, Plaintiffs are only seeking to recover benefits they allege were wrongly paid to the deceased's son. Plaintiffs have made no effort to obtain any relief for the plan itself. That portion of Plaintiffs' amended complaint which seeks relief for an alleged breach of fiduciary duty must be dismissed *sua sponte.*

■ This Court will next turn to Defendant Price's motion for summary judgment. Defendant Price offers several grounds upon which this Court might grant its motion. Among those grounds is that Defendant Price is not the administrator of the Plan and, therefore, is not a proper defendant. A beneficiary is entitled to file suit to recover benefits due him under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B). However, the proper party defendant in a denial of benefits claim is the plan administrator. *See Layes v. Mead Corp.,* 132 F.3d 1246, 1249 (8th Cir.1998). *See also Garren v. John Hancock Mut. Life Ins. Co.,* 114 F.3d 186, 187 (11th Cir.1997) (holding that "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan").

■ In the case at bar, both the Plan documents and the record keeping agreement make it clear that the Committee was at all times the Administrator. Defendant Price determined that, based on the information it had on file, Michael Harpole was the beneficiary and paid him the benefits. Plaintiffs then sought administrative relief. As the Administrator, the Committee considered Plaintiffs' arguments and rejected them. It was solely the Committee's decision that the deceased's son, Michael Harpole, was the designated beneficiary and, therefore, the proper party had been paid. Defendant Price was in no way involved in the decision at this point. If the Committee were eventually to be held liable, it is conceiva-

ble that it could have a claim against Defendant Price, but the decision to not pay Plaintiffs was that of the Committee, and, as such, it is the only proper defendant.

Defendant Price's motion for summary judgment is granted, and the case against it is dismissed. Defendant Price's other arguments in support of its motion are clearly moot, but they will, nonetheless, be discussed below in the context of Plaintiffs' motion for summary judgment. Also, the above analysis obviously applies with equal force in Defendant Price's defense to Plaintiffs' motion for summary judgment.

■ This Court now turns to Plaintiffs' motion for summary judgment. It is well settled that when a plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a district court only reviews the administrator's decision for an abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Plan language quoted above clearly gives the Benefits Committee discretionary authority to determine if the appropriate party has been paid the Plan benefits.

■ When applying the abuse of discretion standard, a district court should only overturn an administrator's decision if it is "extraordinarily imprudent or extremely unreasonable." *See Lickteig v. Bus. Men's Assurance Co. of Am.,* 61 F.3d 579, 583 (8th Cir.1995) (internal citations omitted). In making this determination, the court should examine the following factors: 1) whether the interpretation is consistent with the goals of the plan; 2) whether it conflicts with the substantive or procedural requirements of the ERISA statute; 3) whether it renders any plan language meaningless or internally inconsistent; 4) whether the administrator has interpreted the provisions at issue consistently; and 5) whether the interpretation

is contrary to the clear language of the plan. *See id.* at 583–84.

■ With regard to the first factor, the Plan's purpose was to provide its employees an opportunity to further their financial independence and provide for their future needs. To the extent that this factor is relevant to this situation, it favors the Committee's decision. The decision allows the deceased to provide for the future needs of his family, i.e., his son, rather than that of a woman to whom he was no longer married and her daughter to whom he was not related.

With regard to the second factor, ERISA is mostly silent, absent a married participant, as to who a beneficiary is and how they are to be designated. ERISA merely defines the term beneficiary as "a person designated by a participant ... who is or may become entitled to a benefit ...." *See* 29 U.S.C. § 1002(8). "[I]f the designation on file controls, administrators and courts need look no further than the plan documents to determine the beneficiary." *See Tucker v. Shreveport Transit Mgmt., Inc.,* 226 F.3d 394, 398 (5th Cir. 2000) (quoted case omitted). Thus, any decision on how the Committee's decision meets the requirements of ERISA is necessarily dependent on the remaining plan language factors.

Plaintiffs' argument hinges on the plan language factors. Though Plaintiffs do not phrase their argument in precisely this manner, they essentially contend that the Committee abused its discretion when it refused to construe the term "designation" as "specified on a form that is fatally defective if any requested bookkeeping information is omitted." This construction of the term is dubious at best. Indeed, if the Committee had in fact construed the term in such a way, this Court has little doubt that it would have had to rule there had been an abuse of discretion.

By the terms of the Plan and the Record keeping Agreement, beneficiary change forms were effective when filed. Those forms were then to be checked for missing data and the new beneficiary information was to be entered into the record keeping system. When data was missing, the participant was notified that the form could not be processed until such data was received. There was no indication that the form was completely ineffective until the data was received, nor was there such a requirement anywhere in the Plan documents. Therefore, the decision did not render any Plan language meaningless or internally inconsistent and was not contrary to the clear language of the Plan.

This Court cannot say that the Committee's decision was extraordinarily imprudent or extremely unreasonable. In fact, the decision appears to perfectly prudent and reasonable. There was no abuse of discretion on the part of the Committee. Plaintiffs' motion for summary judgment must be denied.

Plaintiffs have cited *Mattias v. Computer Sciences Corp.*, 34 F.Supp.2d 120 (D.R.I.1999), for the proposition that this Court should review the Committee's decision *de novo* because it involves questions of law. Plaintiffs apparently were unable to find more persuasive support for this proposition or felt that it was unnecessary to provide this Court with same. In any event, it is of no consequence; this Court finds the Committee's decision to be supported by the law. As discussed below, even when using the *de novo* standard of review, this Court's decision does not change.

As noted above, ERISA is silent as to how and when a beneficiary designation is changed. It, therefore, provides no guidance as to whether the doctrine of "substantial compliance" applies. To decide this issue, courts have looked in one of two places: federal common law or, following

appropriate choice of law principles, state common law.

■ The Eighth Circuit has, so far, had no occasion to rule on whether substantial compliance applies or, obviously, which of these two routes it would take to answer the question. Yet, this Court does believe the Eighth Circuit has offered some guidance. "[W]here there is no federal statutory law to apply in ERISA litigation, 'federal common law,' not state law should be applied". *See Reid v. Conn. Gen. Life Ins. Co.*, 17 F.3d 1092, 1098 (8th Cir.1994) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)).

The Fourth Circuit recognized this principle and held that, because ERISA had preempted state common law, federal common law should be applied to decide the answer to the substantial compliance question. *See Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 563 (4th Cir.1994). The court went on to adopt the district court's federal common law definition of substantial compliance:

> an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

*See id.* at 564.

The court went on to state that:

> [t]he point of the doctrine ... is to give effect to an insured's intent to comply when that intent is evident. The insured decedent need not *actually* comply, but need only substantially comply with the change of beneficiary provisions of the policy to effectuate the desired

change. A federal common law of substantial compliance requiring that an insured intend to change his beneficiary and that he take positive action to effectuate that intent furthers the purposes of ERISA without compromising the integrity of policies issued by plan sponsors. The provisions of ERISA plans which govern the ability of insureds to change their beneficiaries present a unique context in which the doctrine of substantial compliance may be applied without prejudice to the interests of the plan sponsors and insurers.

*See id.* at 564–65 (footnote omitted) (emphasis in original). *See also DuMond v. Centex Corp.*, 172 F.3d 618, 623 (8th Cir. 1999) (recognizing that substantial compliance with ERISA regulations governing full and fair review would not upset an administrator's decision).

■ Applying these principles to the facts of the case at hand, it is clear that the deceased substantially complied with the change of beneficiary provisions. His intent to change the beneficiary to his son was obvious from the form he filled out and mailed to the record-keeper. Had he not omitted the social security number, the change would have been effective and this suit would never have been brought. Plaintiffs cannot seriously argue that the deceased purposely omitted the information so that if he changed his mind he would have an opportunity to retract the new designation. Moreover, the fact that the deceased submitted the form a little more than a month after his divorce is at least some evidence of his intent to foreclose the claims of his ex-wife and ex-stepdaughter. Furthermore, his actions were for all practical purposes similar to those required by the policy. In fact, they were identical save for his omitting his son's social security number. In short, the deceased substantially complied with the change of beneficiary provisions of the pol-icy. Plaintiffs' motion for summary judgment must be denied.

As noted above, other courts have looked to appropriate state law to decide the substantial compliance question. The Ninth Circuit has held that ERISA did not preempt state common law on the issue of substantial compliance. *See Bankamerica Pension Plan v. McMath*, 206 F.3d 821, 829–30 (9th Cir.2000). The Plan in this case had a Louisiana choice of law provision. Neither party has raised any doubts as to this provision's validity. Therefore, this Court will now apply the Ninth Circuit approach to substantial compliance using Louisiana law.

The Court of Appeal of Louisiana has had the opportunity to speak to this issue on several occasions:

it is settled that substantial compliance by an insured with policy provisions for a change of beneficiary will be given effect where the intention of the insured to make a change is manifest and the change of beneficiary is not contrary to law and does not affect vested rights. It is equally well settled that the internal procedures established by the insurer in connection with applications for change of beneficiary are mainly for the benefit of the insurer and do not operate to provide an exclusive method for a change of beneficiary.

*See Philadelphia Life Ins. Co. v. Whitman*, 484 So.2d 266, 268 (La.Ct.App.1986). *See also La. Savings Ass'n v. Bluebonnet Holding P'ship*, 546 So.2d 869 (La.App. 1989); *Woodmen of the World Life Ins. Soc'y, v. Hymel*, 544 So.2d 664 (La.Ct.App. 1989).

Turning to the case at bar, the deceased's intent, as noted above, cannot be questioned. Plaintiffs clearly had no vested rights at the time he submitted the beneficiary change form. Furthermore, under Louisiana law, the internal proce-

dures associated with the change are for the protection of the company and are not to be used by ex-wives to defeat the obvious intent of their now-deceased ex-husbands. Under this theory of substantial compliance as well, the deceased substantially complied with the change of beneficiary provisions of the policy. Again, Plaintiffs' motion for summary judgment must be denied.

■■■ Plaintiffs' final argument is that absence of a Qualified Domestic Relations Order in the divorce decree somehow invalidated the beneficiary change. Plaintiffs have not provided this Court with the slightest modicum of support for this proposition. This Court does not even know how to address this argument other than to state that the lack of a Qualified Domestic Relations Order has absolutely no bearing on the deceased's ability to change the beneficiary of his Plan benefits. Even again, Plaintiffs' motion for summary judgment must be denied.

For the reasons stated above, Plaintiffs' claim of breach of fiduciary duty is DISMISSED *sua sponte.* Defendant Price's Motion For Summary Judgment is GRANTED. Plaintiffs' Motion For Summary Judgment is DENIED.

Furthermore, Plaintiff's motion states that "[t]he pleadings, interrogatories, and other matters before the Court demonstrate that there are no genuine issues of material fact remaining regarding the Plaintiff's Complaint." This Court believes that combining this statement with the above analysis of the law would make summary judgment in favor of Defendant Entergy appropriate. Indeed, Defendant Entergy may very well desire to file such a motion.