In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3143

METROPOLITAN LIFE INSURANCE COMPANY,

*Plaintiff,*

*v.*

MILDRED JOHNSON,

*Defendant-Appellant,*

*v.*

LaSHANDA SMITH, LEONARD SMITH
AND CAROLYN HALL,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 2138—**Joan Lefkow**, *Judge.*

ARGUED APRIL 2, 2002—DECIDED JULY 17, 2002

Before POSNER, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* Metropolitan Life Insurance Company ("MetLife") filed an interpleader action, requesting the district court to designate the proper beneficiary of Jimmie Johnson's life insurance policy. The district court ruled in favor of LaShanda Smith, Leonard Smith and Carolyn Hall, and the insured's former wife, Mildred Johnson, appeals. We affirm.

**I.**

Jimmie Johnson was an employee of General Electric ("GE") from 1968 until his death on February 15, 1999. During his employment, he was a participant in the GE Life, Disability and Medical Plan (the "Plan"), an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* GE funded the Plan through an insurance policy issued by MetLife. Johnson had $104,902.00 in life insurance as of the date of his death. The Plan provides that the life insurance benefits will be paid to the beneficiary designated by the insured.

On October 8, 1968, Johnson designated his then-wife Mildred Johnson as sole beneficiary of the Plan. Several years later, Jimmie and Mildred divorced. On approximately December 27, 1996, Johnson completed a beneficiary designation form, naming LaShanda Smith, Leonard Smith and Carolyn Hall (jointly referred to as "SS&H") as co-beneficiaries.[1] The 1996 form contained a number of errors. First, Johnson checked the box for "GE S&SP Life Insurance Plan." However, he was never enrolled in that plan; rather, he should have checked the box for "GE Life or GE Leadership Life Insurance Plan." Also, Johnson listed his mother's address instead of his own. Finally, he indicated on the form

---

[1]  According to the 1996 designation form, LaShanda Smith and Leonard Smith are Johnson's children, and Carolyn Hall is his friend. LaShanda and Leonard are not Mildred's children, but were born while Jimmie was still married to Mildred. She claimed that she did not know of their existence until notified of their claim on the life insurance proceeds. SS&H disputed this, but this dispute is immaterial for purposes of this appeal. The record reveals that Jimmie had at least one other child, Jimmie Johnson, Jr., his son by Mildred, born in 1965.

that he was "separated" from his wife, Mildred, rather than divorced.

When Johnson died on February 15, 1999, GE informed Mildred that she was the beneficiary of his life insurance policy, and she filed a beneficiary claim. Subsequently, on March 1, 1999, LaShanda Smith sent GE a letter stating that she was aware that her father had made her "the only primary beneficiary to receive his life insurance benefits" and inquiring how to receive those proceeds. In her letter, she stated that, in late 1996, she and her brother had signed a change of beneficiary form, and that, in January 1997, her father had received confirmation of the change of beneficiary. MetLife claimed to have no record of the change of beneficiary designation and requested LaShanda to provide documentation of the change. She provided a copy of the 1996 form and a copy of a letter sent to Jimmie Johnson from the General Electric Enrollment Center dated January 1, 1997. In this letter, GE confirms receipt of Johnson's completed beneficiary designation form. However, the letter did not refer to a particular plan, nor did it indicate the identity of the newly designated beneficiaries.[2]

In response to the multiple claims to the proceeds of Johnson's life insurance policy, MetLife filed an interpleader action, requesting the court to determine who was prop-

---

[2] The confirmation letter provides, in its entirety: "This letter confirms receipt of your completed beneficiary designation form. The beneficiaries designated on this form will replace any beneficiaries you may have previously named. Please remember that if in the future you enroll in a plan requiring a beneficiary designation, or if you want to change your beneficiaries, you must submit another form at that time. If you have any questions please call the GE Enrollment Center at 1-800-252-5259."

erly entitled to the proceeds.[3] After Mildred Johnson and Carolyn Hall filed answers, all parties moved for summary judgment, agreeing that the sole issue was whether Johnson had executed a valid change of beneficiary form in 1996. The court denied Mildred's motion and granted summary judgment to SS&H, concluding that the 1996 form evidenced Jimmie Johnson's intent to change his beneficiary from Mildred to SS&H and that he substantially complied with the requirements of the Plan in doing so. Mildred Johnson appeals.

## II.

### A.  Standard of Review

"We conduct *de novo* review of a district court's decision involving cross-motions for summary judgment." *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Hendricks-Robinson*, 154 F.3d at 692. Accordingly, we review

---

[3]  On January 9, 2001, the district court granted MetLife leave to deposit $114,552.97 (the amount of the policy plus interest) with the Registry of the United States District Court for the Northern District of Illinois, granted MetLife's motion for entry of a final decree of interpleader and dismissed MetLife from the action with prejudice.

the record in the light most favorable to Mildred Johnson, viewing all of the facts, and drawing all reasonable inferences from those facts, in her favor and reversing if we find a genuine issue concerning any fact that might affect the outcome of the case. *Id.* However, the mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *Vukadinovich v. Board of Sch. Tr. of North Newton Sch. Corp.,* 278 F.3d 693, 699 (7th Cir. 2002).

While we must construe the facts in favor of Mildred, that, however, does not diminish her responsibility to present those facts in the manner dictated by local court rules. The Local Rules of the Northern District of Illinois require a moving party to submit, with its summary judgment motion, "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. Local R. 56.1(a)(3). This statement "shall consist of short, numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." *Id.* at 56.1(a). The opposing party must also submit a statement responding to each numbered paragraph of the moving party's statement, likewise supporting any disagreement with references to the record. *Id.* at 56.1(b)(3)(A). All supported facts set forth in a moving party's Rule 56.1 statement "will be deemed admitted unless controverted by" the opposing party. *Id.* at 56.1(a).

In this case, Mildred failed to follow the procedures set forth by Local Rule 56.1. Mildred filed her summary judgment motion without the required statement, although her motion did include a section entitled "Facts." This section was not delineated into separate numbered paragraphs. She later filed an "Amended Statement of Material Facts,"

which is structured in separately numbered paragraphs, but many paragraphs lack any reference to relevant portions of the record. However, SS&H fared no better. They did not file a statement with their motion for summary judgment, and in responding to Johnson's statement, they, in many cases, also failed to make references to the record. But then, Mildred never responded to SS&H's statement. The district court, faced with this hodge-podge of factual and often unsupported assertions, accepted those facts that both parties admitted were uncontroverted. The court also deemed admitted any facts supported with citations to the record set forth in Mildred's statement, where SS&H stated they had insufficient knowledge to admit or deny the facts. The court then disregarded the statements set forth in SS&H's statement unless admitted by Mildred. This resulted in a version of the facts that is perhaps not as favorable to Mildred as it could have been had she followed the local rules. But, we have emphasized the importance of local rules and "have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (upholding the district court's decision to strike response in its entirety rather than selectively due to failure to comply with local rules).

In this case, Mildred's failure to comply with the local rules resulted in several significant factual assumptions. For instance, SS&H attached GE's 1997 letter to their summary judgment motion and to their response to Mildred's summary judgment motion, without properly authenticating the document in any way. However, Mildred then referred to the letter in her response to SS&H's summary judgment motion, without contesting its admissibility. Thus, the district court properly treated the letter as an uncontested fact even though it was not properly authenticated or contained

within SS&H's Rule 56.1 statement. Additionally, and more damaging to Mildred's case, she did not properly contest the 1996 change of beneficiary form. That form was initially offered into evidence by MetLife as an exhibit to the interpleader action. It was then submitted by Mildred in her motion for summary judgment and by SS&H in their own motion for summary judgment. Not one party sought to properly authenticate the form. While Mildred attempted to cast doubt on the form's validity through conclusory arguments, she did not present any evidence in her own Rule 56.1 statement to challenge it nor did she object to its admissibility.[4] Given her failure to adequately dispute the pos-

---

[4] For example, Mildred argued that Johnson's signature on the 1996 form was different from the one on the 1968 beneficiary designation. Mildred represented in her motion for summary judgment, and her attorney verified at oral argument, that an expert witness could not issue an opinion on the validity of the 1996 signature because no recent signatures could be obtained by subpoenas issued to his mother, Clara Johnson, Murbile Harmon (Johnson's sister) and the Internal Revenue Service. The attorney for SS&H stated at oral argument that no subpoenas were served on him or his clients. The district court did not consider this argument since Mildred had failed to provide competent evidence of the decedent's signature. Mildred also argued that the form was suspect because Johnson listed himself as "legally separated," although he had been divorced from Mildred for twenty years. Like the district court, we are unsure why this inconsistency was material. Finally, Mildred argued that the form may not have been executed by Johnson because he listed his mother's address. However, the district court also ignored this argument because Mildred failed to present any evidence of his address in 1996. As noted, Mildred's failure to comply with the local rules was her downfall in this action. While we construe the facts in her favor, Mildred must present us with *some facts* to construe in her favor. Instead, she attempts to create a
(continued...)

sible factual issues surrounding the authenticity of the 1997 letter or the 1996 form, the district court properly concluded that the factual assertions contained in those documents were undisputed.

## B.  Applicable Law

### 1.  Preemption.

Consequently, the only issue before us is whether, as a matter of law, Johnson effectively changed his beneficiary designation by executing the 1996 form. Under ERISA, a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The terms of the Plan, in Part I (C) entitled, "Designation of Beneficiary," provide in relevant part:

> In the event of your death from any cause, the amount of your Life Insurance then in force will be payable to the beneficiary designated by you. You may change your beneficiary at any time. *Any designation of beneficiary or any change of beneficiary should be made in a form acceptable to the carrier and must be filed with the records maintained by your employee relations or personnel accounting office.* . . . Upon receipt of written notice of change of beneficiary by such office, the change shall relate back and take effect as of the date you signed such written notice, whether or not you are living at the time of such receipt . . . . (Emphasis added.)

---

[4] (...continued)
factual dispute by introducing doubt as to who executed the form through conclusory assertions. As we have stated over and over again, allegations of the mere existence of some alleged factual dispute are not enough to preclude summary judgment. *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1140 (7th Cir. 1998).

Here, Johnson attempted to designate SS&H as his bene-ficiaries by executing the 1996 form and, according to the 1997 letter from the GE Enrollment Center to Johnson, that form was filed and accepted by his employer. Nevertheless, it is undisputed that Johnson made several errors in execut-ing the form. Thus, the question before us is whether the beneficiary change form was effective, notwithstanding those errors.

To address this issue, we must first determine the control-ling law. As noted, the Plan is governed by ERISA. How-ever, ERISA does not contain any provisions governing disputes between claimants to plan proceeds, or addressing whether an insured has effectively changed a beneficiary designation. *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 559 (4th Cir. 1994). Thus, Mildred advocates that we apply the Illinois doctrine of "substantial compliance,"[5] relying on the principle enunciated in *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 98 (1993), that ERISA "leaves room for complementary or dual federal and State regulation." SS&H, on the other hand, argue that ERISA preempts state law and, therefore, urge us to apply federal common law to resolve the dispute.[6]

---

[5] The Illinois doctrine of substantial compliance requires that, for a change of beneficiary to be effective, "the party asserting that a change has occurred must establish: (1) the certainty of the in-sured's intent to change his beneficiary; and (2) that the insured did everything he could have reasonably done under the cir-cumstances to carry out his intention to change the beneficiary." *Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 663 (7th Cir. 1999) (citing *Dooley v. James A. Dooley Assoc. Employees Ret. Plan*, 442 N.E.2d 222, 227 (Ill. 1982)).

[6] While this decision was circulating among the panel, another panel of this court rendered a decision on similar facts. *See Davis*

(continued...)

Generally, ERISA preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan" which is subject to ERISA. *See* 29 U.S.C. § 1144(a). The Supreme Court has set forth a two-part inquiry for determining whether a state law "relates to" an employee benefit plan for purposes of 29 U.S.C. § 1144(a). According to the Court, a state law[7] "relates to" an ERISA plan if it has (1) a connection with or (2) reference to such a plan. *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997) (citations omitted). A state law has "reference to" an ERISA plan where it "acts immediately and exclusively upon ERISA plans, . . . or where the existence of ERISA plans is essential to the law's operation." *Dillingham*, 519 U.S. at 325. The Illinois doctrine of substantial compliance applies generally to life insurance policy beneficiary designations, *see Dooley*, 442 N.E.2d at 227, and accordingly does not have "reference to" an ERISA plan for purposes of preemption. Therefore, the only issue is whether the substantial compliance doctrine as applied in this case has a "connection with" ERISA.

In *Egelhoff*, the Supreme Court recently addressed whether a state law had a "connection with" ERISA when it analyzed whether a Washington statute providing for automatic revocation, upon divorce, of any designation of spouse as a beneficiary of a life insurance policy was preempted, as it

---

[6] (...continued)
*v. Combes*, ___ F.3d ___, 2002 WL 1396515 (7th Cir. June 28, 2002). In that case, the district court concluded that federal law controlled the ERISA-governed life insurance policy. The parties did not appeal that ruling, and this court proceeded on that basis.

[7] ERISA defines a state law as including "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

applied to ERISA plans. *See Egelhoff v. Egelhoff*, 532 U.S. 141 (2001). The Court stated that, to determine whether a state law has "the forbidden connection, we look both to the objectives of the ERISA statute . . . as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 147 (citation omitted). Applying this principle, the Supreme Court concluded that the Washington statute in question had "an impermissible connection with" ERISA plans because it purported to bind "ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Id.* Specifically, the Supreme Court found that the Washington statute ran contrary to the ERISA provisions that a plan shall " 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.' § 1002(8)." *Id.* at 147. The Supreme Court criticized the Washington statute as one which "governs the payment of benefits, a central matter of plan administration," *id.* at 148. In contrast, the Court has upheld generally applicable laws "where ERISA has nothing to say . . . notwithstanding their incidental effect on ERISA plans." *Id.* at 147-48.[8]

---

[8] *See, e.g., Dillingham*, 519 U.S. at 334 (holding that California prevailing wage statute has no "connection with" ERISA plans, even where it altered incentives facing ERISA plans, and thus was not preempted); *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 659 (1995) (holding that New York statute regulating hospital rates was not pre-

(continued...)

We have not directly addressed the precise issue of whether ERISA preempts a state's substantial compliance doctrine because the doctrine "relates to" an ERISA plan.[9] Other circuits have had occasion to do so, and their conclusions are split. For instance, the Ninth Circuit recently concluded that ERISA did not preempt the state doctrine of substantial compliance because it would not affect the administration of the plan, but would merely "aid in determining the identity of the proper recipient of the proceeds." *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 829 (9th Cir. 2000), *cert. denied, McMath v. Montgomery*, 531 U.S. 952. *See also Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1052 (10th Cir. 1992) (state law "doctrine of substantial compliance does not materially modify a plan, but rather is simply a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract").

In contrast, the Fourth Circuit, while agreeing that the doctrine of substantial compliance did not *modify* a plan, nevertheless concluded that the state law "relates to" such a plan because it involved the designation of the beneficiary

---

[8]  (...continued)
empted by ERISA, even though resulting cost variations encouraged ERISA plans to provide insurance through certain providers, because it did not bind plan administrators to any particular choice).

[9]  *See Davis*, 2002 WL 1396515 at *3 (applying federal common law doctrine of substantial compliance without reaching preemption issue); *Aetna Life Ins. Co.*, 184 F.3d at 663-65 (applying Illinois doctrine of substantial compliance without discussion of choice of law issue); *Rendleman v. Metropolitan Life Ins. Co.*, 937 F.2d 1292, 1296-97 (7th Cir. 1991) (same); *Connecticut General Life Ins. Co. v. Gulley*, 668 F.2d 325, 326-28 (7th Cir. 1982) (same).

of an ERISA plan. *Phoenix Mut.*, 30 F.3d at 560. Accordingly, the court concluded that ERISA preempted the state law doctrine, and adopted the district court's formulation of the following federal common law test: an "insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." *Id.* at 564 (relying upon established South Carolina law to formulate test). *See also Tinsley v. General Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000) (in interpleader action to determine legitimacy of beneficiary designation under life insurance policy, ERISA preempted state law; however, court looked to Michigan state law to formulate federal common law test for analyzing beneficiary designations that are allegedly the result of forgery or undue influence).

Given the Supreme Court's latest word on ERISA preemption in *Egelhoff*, we believe that a state law affecting the designation of a beneficiary is sufficiently "related to" an ERISA plan such that a state law doctrine of substantial compliance is preempted by ERISA. Thus, we find the Fourth Circuit's decision in *Phoenix Mutual* persuasive and believe this conclusion is consistent with our own precedent. *See McClean v. Ford Motor Co.*, 831 F.2d 723, 727-28 (7th Cir. 1987) (in determining proper beneficiary of pension plan, where Indiana testamentary transfer law, if applied, would determine the distribution under the plan, ERISA preempted state law). Under an ERISA plan, benefits must be paid to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan." 29 U.S.C. § 1002(8). The plan administrator's determination, and a court's interpretation, of the identity of that beneficiary clearly "relates to" ERISA insofar as it "governs the pay-

ment of benefits, a central matter of plan administration."
*Egelhoff*, 532 U.S. at 148. *Egelhoff* stands for the proposition
that a state law cannot invalidate an ERISA plan beneficiary
designation by mandating distribution to another person.
Similarly to the operation of the Washington statute un-
der consideration in *Egelhoff,* the *application* of the legal
doctrine of substantial compliance mandates a conclusion
as to the identity of the proper recipient of such payments.
It is thus very different from state laws which may have
an incidental effect on ERISA plans, but which do not man-
date certain choices or conclusions. *See, e.g., supra* note 7.
The Ninth Circuit's reasoning that the state law doctrine
of substantial compliance would not affect the administra-
tion of the plan, but would merely "aid in determining the
identity of the proper recipient of the proceeds," *McMath*,
206 F.3d at 829, seems to us a distinction without a differ-
ence. Thus, we conclude that ERISA preempts the Illinois
state law doctrine of substantial compliance.


### 2.   Federal common law.

The question then is whether the 1996 change of benefi-
ciary form is valid under ERISA. But, as we previously
noted, ERISA is silent as to the resolution of disputes
between putative beneficiaries of a life insurance policy. The
Supreme Court has recognized, in situations where ERISA
preempts state law but is silent on a topic, that courts would
have to develop a body of federal common law, where
appropriate, based on principles of state law. *See Pilot
Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987); *Firestone Tire
& Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989). *See also
Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir. 1993)
(where ERISA is silent, court must develop federal common
law and, in so doing, may use state common law as a basis,
to the extent that state law is not inconsistent with congres-
sional policy concerns).

On appeal, Mildred argues that, even if ERISA preempts state law, in formulating federal common law we should still look to Illinois' doctrine of substantial compliance. SS&H argue that we should instead adopt the Fourth Circuit's standard from *Phoenix Mutual*. Under the Fourth Circuit's test, we look at whether the insured "evidences his or her intent" and "attempts to effectuate the change by undertaking positive actions." *Phoenix Mutual*, 30 F.3d at 564. Mildred believes the Fourth Circuit's standard is too lenient because, under the Illinois standard, SS&H would be required to establish the "certainty" of the insured's intent and that he "did everything he could have reasonably done under the circumstances" to carry out that intent. *Aetna Life Ins. Co.*, 184 F.3d at 663. The Illinois doctrine of substantial compliance and the test enunciated by the Fourth Circuit invoking federal common law are essentially the same, and in this particular case, it would make no practical difference which standard we applied. We recognize, however, the need to ensure uniformity in ERISA jurisprudence, and of the principle that "federal common law should be consistent across the circuits." *Phoenix Mutual*, 30 F.3d at 564. *See also Egelhoff*, 532 U.S. at 148 ("one of the principal goals of ERISA is to enable employers to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits") (citation omitted). In analyzing whether the doctrine of substantial compliance applied to a signature requirement, this court recently adopted the Fourth Circuit's test as set forth in *Phoenix Mutual*.[10]

---

[10] A number of district courts have also followed the test set forth in *Phoenix Mutual. See e.g.*, *Life Ins. Co. of North America v. Leeson*, 2002 WL 483563, *6 (S.D. Ohio March 19, 2002); *Harpole v. Entergy Arkansas, Inc.*, 197 F.Supp.2d 1152, 1158 (E.D.Ark. 2002);

(continued...)

*Davis*, 2002 WL 1396515 at *9-10. Therefore, we will apply that formulation of the federal common law doctrine of substantial compliance.

## C. Substantial Compliance

Applying this test, we now turn to the 1996 form to determine whether Johnson substantially complied with the instructions on the form by evidencing his intent to make a change of beneficiary, and by attempting to effectuate that change by undertaking positive action. *Phoenix Mutual*, 30 F.3d at 564. The instructions attached to the change of beneficiary form told Johnson that he could "designate a beneficiary only for the plans in which you are currently participating or have an account balance. CHECK ONLY THOSE PLANS FOR WHICH YOU WANT THIS BENEFICIARY DESIGNATION TO APPLY." The completed form was to be sent to the GE Enrollment Center. As already noted, Johnson checked the box for the wrong life insurance policy. However, aside from that error, Johnson took positive action to effectuate a change in his life insurance policy. Specifically, the undisputed facts show that Johnson filled out GE's form indicating he wished to change the beneficiary designation on his life insurance policy (although he checked the wrong box), that he designated SS&H as the new beneficiaries of a life insurance plan and that the GE Enrollment Center (the place he was instructed to mail the form) sent him a confirmation letter indicating that he mailed the form as required. Moreover,

---

[10] (...continued)
*Metropolitan Life Ins. Co. v. Hall*, 9 F.Supp.2d 560, 563 (D.Md. 1998); *Connecticut Gen. Life Ins. Co. v. Thomas*, 910 F.Supp. 297, 301 (S.D.Tex. 1995); *First Capital Life Ins. Co. v. AAA Communications, Inc.*, 906 F.Supp 1546, 1560 (N.D.Ga. 1995).

the GE Enrollment Center's letter did not alert him that he had checked the box for an insurance policy different than the one covering him. Under these circumstances, we conclude that Johnson clearly evidenced an intent to change his beneficiary designation, that he took positive action to effectuate that intent, and that checking the wrong box does not serve to negate that intent. It is true that Johnson made some errors, but the doctrine of substantial compliance by its very nature contemplates something less than actual compliance. *Phoenix Mutual*, 30 F.3d at 565. *Cf. Aetna Life Ins. Co.*, 184 F.3d at 664 ("when an insured has done everything within his power to effectuate a change in life insurance policy beneficiaries, exact compliance with the terms of the policy is not necessary"); *Connecticut General Life Ins. Co.*, 668 F.2d at 327-28 (where insured died after executing, but before mailing, change of beneficiary form, court found that insured had substantially complied with the insurance contract even though the contract provided that no change of beneficiary would take effect until received by the insurance company). *Contrast Rendleman*, 937 F.2d at 1297 (evidence of insured's action to change his beneficiary, where he told another person he did not want his wife to collect his life insurance and he obtained the appropriate form, but never completed it, was insufficient to support conclusion that he had effectively revoked the beneficiary designation prior to his death).

Mildred argues, however, that the 1996 form does not evidence Johnson's intent because there is no way to tell which of the benefit plans Johnson wished to change because he did not refer to the appropriate plan. The 1996 form contained boxes for the following plans: "GE Pension" Plan, a "GE Savings & Security (S&SP) Account Balance" Plan, a "GE S&SP Life Insurance" Plan, a "GE Life or GE Leadership Life Insurance" Plan, a "GE Accidental Death & Dismemberment Insurance" Plan, a "GE A Plus Life Insur-

ance" Plan and a "GE Personal Accident Insurance" Plan. Johnson was a participant in the first, second, fourth and fifth plans. Thus, Mildred argues that the change could just as easily have been applicable to one of his other three plans, and thus Johnson's intent to change the beneficiary on his life insurance policy in particular cannot be determined with any certainty from the form itself. We disagree, and conclude that the 1996 form does evidence Johnson's intent. First, it is undisputed that Johnson only owned one life insurance plan, and the 1996 form reflected an intent to change his beneficiary designation on a life insurance plan. Second, according to LaShanda's undisputed statement (the admissibility of which Mildred did not challenge), her father told her that she and her brother were the intended beneficiaries of his life insurance policy, not of one of his other plans. Finally, Mildred was the sole beneficiary of Johnson's pension plans and his mother, Clara Johnson, was the sole beneficiary of his savings account. The payout of Johnson's final paycheck was made to his three children, Jimmie R. Johnson, Leonard P. Smith and LaShanda D. Smith, pursuant to an affidavit filed by Clara Johnson. None of these beneficiary designations are contested, further supporting the conclusion that Johnson did not intend to change the beneficiary designation on any of the plans other than the one for life insurance. Thus, we conclude that the 1996 form evidences Johnson's intent to change his life insurance designation, and is therefore a sufficient basis upon which to grant summary judgment to SS&H.

## III.

For the reasons stated herein, we conclude that the evidence establishes that, under the federal common law doctrine of substantial compliance, Jimmie Johnson met

the criteria for changing his beneficiary designation on his life insurance policy, and we therefore AFFIRM the district court's grant of summary judgment to LaShanda Smith, Leonard Smith and Carolyn Hall.

A true Copy:

      Teste:

                        _____

                    *Clerk of the United States Court of Appeals for the Seventh Circuit*