In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1521

CHERYL A. BURNS,

*Plaintiff-Appellant,*

*v.*

ORTHOTEK, INC. EMPLOYEES' PENSION PLAN AND
TRUST, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:08-CV-190-PS—**Philip P. Simon**, *Chief Judge.*

ARGUED OCTOBER 26, 2010—DECIDED SEPTEMBER 15, 2011

Before POSNER, FLAUM, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This case requires us to decide a
dispute over the pension benefits of the late Dr. Richard
Burns. Before his death Dr. Burns designated his three
sons as beneficiaries. But because the Employee Retire-
ment Income Security Act ("ERISA") guarantees sur-
viving spouses certain benefits, this designation is only
effective if his widow, Cheryl Burns, consented. She

signed a written consent form, but after her husband died, she claimed her consent was invalid because it was not witnessed, as required by ERISA. The pension plan found her consent valid and denied her claim for benefits. The district court upheld that decision, invoking the substantial-compliance doctrine and finding that the consent form Mrs. Burns signed substantially complied with ERISA.

We affirm, although on different grounds. For reasons we will explain, the substantial-compliance doctrine does not apply here. Nevertheless, the pension plan was within its discretion to deny Mrs. Burns's claim for benefits. Although no witness signed the consent form *as a witness*, under the unusual facts of this case, we agree with the plan that Dr. Burns, the plan representative, witnessed his wife's written consent to the waiver, as required by ERISA.

## I. Background

Dr. Burns was the principal shareholder, officer, and sole director of Orthotek, Inc., an Indiana corporation through which he conducted his orthodontics practice. He created the Orthotek, Inc. Employees' Pension Plan and Trust, for which he was the plan administrator, named fiduciary, and primary plan participant. Dr. Burns died on May 11, 2004. He was survived by his second wife, Cheryl Burns, and three sons from his first marriage.

About a year before his death, on February 24 and 25, 2003, Dr. and Mrs. Burns signed three related Plan docu-

ments in which, respectively: (1) Dr. Burns waived his right to a joint and survivor annuity, to which Mrs. Burns consented; (2) Dr. Burns designated his sons as beneficiaries in the event of his death; and (3) Mrs. Burns consented to Dr. Burns's designation of his sons as beneficiaries. Dr. Burns signed the first and second documents on February 24, and Mrs. Burns signed the first and third the next day, on February 25. For practical purposes, the three documents comprise a single writing, and we will refer to them this way. If valid, their combined effect is to divest Mrs. Burns of her right to Dr. Burns's pension and designate his sons as beneficiaries.

After Dr. Burns's death in May 2004, Mrs. Burns filed a claim for benefits with the Plan. She argued that the written consent she signed a year earlier was invalid for three reasons: (1) She did not remember signing the form; (2) its impact had not been explained to her; and (3) her consent was not witnessed. Regarding the third argument, she noted that Dr. Burns was the only other person to sign the form and his signature is dated the day *before* hers.

The Plan found Mrs. Burns's consent valid and denied her claim for benefits, relying in part on the fact that she never denied signing the written consent and that her signature and "CAB" initials appeared in multiple places on the form and matched a verified signature she had on file with the Plan. The Plan noted as well that the consent form itself clearly explained its purpose and Mrs. Burns signed or initialed in relevant places indicating that she understood. Finally, the Plan found

that Dr. Burns, as plan representative, had witnessed his wife's written consent:

> Here, Dr. Burns was the Plan representative at the time these documents were executed. Whether Dr. Burns and Cheryl Burns were physically in the same location when she signed the waiver and consent forms or whether they executed the documents on precisely the same day is beside the point. . . . Given that: (1) she would only have received the documents from Dr. Burns; (2) Ms. Burns' signature or initials appear in four places on the same documents; (3) the documents are part of the Plan's documents; and (4) Dr. Burns and Ms. Burns clearly knew who each other was, the purpose of ERISA's requirement that the waiver be witnessed has been satisfied.

Alternatively, the Plan found that the consent form substantially complied with ERISA's witness requirement.

Mrs. Burns brought this suit against the Plan, its independent fiduciary, and one of Dr. Burns's sons who served as successor trustee (collectively "the Plan"), raising a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). The Plan moved for summary judgment. The district court granted the motion, affirming the Plan's denial of Mrs. Burns's claim. The court did not directly address whether Dr. Burns witnessed Mrs. Burns's written consent to the waiver, relying instead on the doctrine of substantial compliance. Though the consent form contained no signature of a witness *as a witness*, the court held that it nonetheless substantially complied with the requirements of ERISA. Mrs. Burns appealed.

**II. Discussion**

We review the district court's grant of summary judgment de novo. *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). Because the Plan documents unambiguously vest the Plan with decisionmaking discretion, we review the denial of benefits under the arbitrary-and-capricious standard. *See Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009). Under this deferential standard, we will uphold the Plan's decision if:

> "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem."

*Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010) (quoting *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321-22 (7th Cir. 2007)). Even where the arbitrary-and-capricious standard applies, however, legal issues regarding the interpretation of terms in ERISA are reviewed de novo. *Wetzler v. Ill. CPA Soc. & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009) (A determination of whether certain terms in a pension plan violate ERISA is a question of law subject to de novo review.); s*ee also Holt v. Winpisinger*, 811 F.2d 1532, 1536 (D.C. Cir. 1987).

One of ERISA's default rules is that a "survivor annuity shall be provided to the surviving spouse of" a vested

pension-plan participant, like Dr. Burns, who dies before the starting date for receipt of benefits. 29 U.S.C. § 1055(a)(2). However, a plan participant may elect to waive this spousal-survivor annuity and designate a beneficiary other than the surviving spouse. With exceptions not applicable here, this election is valid only if "the spouse of the participant consents in writing," the election "designates a beneficiary," and "the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary." *Id.* § 1055(c)(2)(A). Here, it is undisputed that Dr. Burns executed a waiver of the survivor annuity, designated his sons as beneficiaries, and complied with the bulk of § 1055; it's also clear that Mrs. Burns signed the written consent form. The issue is whether Dr. Burns, as plan representative, witnessed Mrs. Burns's written consent.[1]

The district court did not directly answer this question, relying instead on the doctrine of substantial compliance as applied in *Davis v. Combes*, 294 F.3d 931 (7th Cir. 2002), to validate Mrs. Burns's written consent. "The concept of substantial compliance is part of the body of federal common law that the courts have developed for issues on which ERISA does not speak directly." *Id.* at 940; *see also Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558,

---

[1] Mrs. Burns initially challenged the validity of her written consent on two additional grounds: She did not remember signing it and claimed that its purpose was not explained to her. She has not pursued these arguments on appeal.

567 (7th Cir. 2002). The question in *Davis* was the validity of an unsigned life-insurance designation-of-beneficiary form. To validly designate a life-insurance beneficiary, ERISA contains "no explicit requirement . . . [that the designation] form must be signed and dated in a specific manner." *Id*. Because ERISA is silent on the topic, in *Davis* we applied the doctrine of substantial compliance and held that the unsigned beneficiary-designation form was nonetheless valid. *Id.*

In contrast to *Davis*, however, ERISA is *not* silent on the specific issue presented here. To the contrary, ERISA explicitly requires written spousal consent, witnessed by a notary or plan representative, for a pension-plan participant to validly waive a survivor annuity and designate a new beneficiary. 29 U.S.C. § 1055(c)(2)(A)(iii). Because of this explicit statutory requirement, the doctrine of substantial compliance cannot cure an unwitnessed spousal consent. *See Butler v. Encyc. Brittanica, Inc.*, 41 F.3d 285, 294 (7th Cir. 1994) ("[W]e cannot adopt a substantial compliance doctrine as a matter of federal common law in this case if it would conflict with ERISA's literal requirement that a spousal consent be 'witnessed.'").

But "[w]e can affirm on any ground that the record fairly supports and the appellee has not waived." *Martinez v. United Autoworkers*, 772 F.2d 348, 353 (7th Cir. 1985). The Plan's primary finding was that Dr. Burns did, in fact, witness Mrs. Burns's written consent. Although the term "witnessed" is not defined in ERISA, we have previously observed that the sole purpose of the § 1055

witness requirement is to verify the authenticity of the consenting spouse's signature. *Butler*, 41 F.3d at 293-94. Whether the witness must be physically present when the spouse signs the written consent or must attest in writing to the signature's authenticity are debatable questions.

Our decision in *Butler* is instructive. There, a widower sought a survivor annuity despite having consented in writing to his late wife's designation of her daughter as beneficiary. He claimed that his notarized, written consent was invalid because he signed it outside the physical presence of the attesting notary. We observed that a physical-presence requirement for witnessing "has considerable appeal, given the usual dictionary definition of the word 'witness.'" *Id*. at 293. On the other hand, we noted the absurdity that would result from a strictly literal interpretation of the term:

> Arguably, compliance with ERISA's literal language in this case would lead to the absurd result of invalidating a spousal consent form that [the consenting spouse] admits that he signed but now attempts to disavow on the technicality that he did not sign it in the physical presence of the notary.

*Id.* at 294. In the end, we sidestepped the interpretive question in *Butler*, holding instead that the notary's signature carried a presumption of regularity and the husband lacked the clear and convincing evidence necessary to overcome that presumption. *Id.* at 294-95. *Butler*'s analysis, however, suggests two points that are particularly relevant here: (1) § 1055 does not *necessarily*

require a witness (whether a notary or plan representative) to be physically present when a spousal consent form is signed; and (2) the witness requirement should not be interpreted to yield absurd results.[2]

   With these principles in mind, we turn to whether Mrs. Burns's written consent was "witnessed" by a plan representative. The only possible witness is Dr. Burns, who was the sole plan representative when Mrs. Burns signed the written consent. Dr. Burns signed the form, but he did so the day before she did, and as such he cannot be said to have signed *as a witness* to her act of signing; her signature did not exist when he signed. But does § 1055 require a witness to sign a consent form in attestation of the consenting spouse's signature? Much like the physical-presence requirement at issue

---

[2] *Butler*'s suggestion that § 1055 does not require the witness to be physically present when the spousal consent form is signed is bolstered by the provision in the Indiana Code governing notaries and the Uniform Law on Notarial Acts. IND. CODE § 33-42-2-2(a)(6)(B) (permitting a notary to acknowledge an instrument's execution if the person executing it "signs the instrument before the notary" *or* "affirms to the notary that the signature on the instrument is the person's own"); UNIF. LAW ON NOTARIAL ACTS § 2(c) (1983) (permitting a notary to "witness" a signature if the notary determines "from satisfactory evidence, that the signature is that of the person . . . named therein"). If a notary in this case could have witnessed Mrs. Burns's signature without being physically present for the signing, we see no reason why ERISA would require more from a plan representative.

in *Butler*, an attestation requirement has some appeal based on the common meaning of the word "witness" in the context of legal documents. *See, e.g.*, BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 938 (2d ed. 2001) (defining a "witness" as "one who, to vouch for the genuineness of a signature, affixes his or her name to an instrument that another has signed"). But, again, as in *Butler*, it makes little sense to strictly enforce an attestation requirement if doing so would produce an absurd result.

It is undisputed that Dr. Burns, the primary plan participant and also the sole plan representative, signed the waiver-and-designation form. As the embodiment of the Plan itself, he himself must have given the form to his wife to sign. Mrs. Burns signed it, something she has never denied. And because the signed consent form made its way into the Plan's files, Mrs. Burns must have returned it to Dr. Burns. Even if Dr. Burns was not physically present when she signed the form—not a known fact—Dr. Burns obviously knew from his own personal knowledge that the "Cheryl Burns" who signed and returned the form to him was his wife, whose consent was required to complete the necessary paperwork to effectuate the waiver and designate his sons as his beneficiaries. So we are left with this question: When a plan participant, who is also the plan representative, signs a beneficiary-designation form requiring spousal consent, gives the form to his consenting wife, who in turn signs it in multiple places acknowledging her consent and returns it to her husband, must the consent be invalidated because the husband did not sign the form a

*second* time as a "witness"? On these facts, invalidating Mrs. Burns's consent would produce an absurd result. The unusual circumstances of this case lead us to conclude that the Plan was within its discretion to find that Dr. Burns, as a plan representative, verified the authenticity of his wife's signature on the written consent form and this satisfied § 1055's witness requirement.

Mrs. Burns relies heavily on *Lasche v. George W. Lasche Basic Profit Sharing Plan*, 111 F.3d 863, 865-67 (11th Cir. 1997), but that case is factually distinguishable. In *Lasche* a widow sought survivor benefits from her late husband's pension plan despite having signed a written waiver and consent to his designation of his three daughters from his first marriage as his beneficiaries. The spousal-consent section of the waiver form had a specific place for a witness to sign, but it was left blank. Other sections of the form were signed by the husband, who (as in this case) was also the plan representative. *Id*. at 864-65. The pension plan argued that the husband's signature on the other sections of the form satisfied § 1055's witness requirement. The Eleventh Circuit rejected this argument for two reasons, one procedural and one factual. First, the argument had not been raised in the district court and was therefore waived. Second, the consent form itself directed the witness to sign in a particular place, which was not done. *Id*. at 866-67. The court found the blank signature line conclusive: "[T]he fact that George signed part five of the form as the Plan's Administrator is irrelevant to the undisputed fact that the [plan representative] or notary public signature

space in part four of the Form [the spousal-consent part] was blank." *Id*. at 867. Thus, *Lasche* stands for the narrow proposition that when a spousal-consent form directs a witness to sign in a particular place, and that space is left blank, the court should infer that the consenting spouse's signature was not in fact witnessed.

Importantly, *Lasche* does not gloss § 1055's witness requirement with special formalities; the court did not suggest that a witness must sign the written spousal consent in a particular place, or even that a plan representative's signature in another section of the form can *never* be evidence that a spousal consent was witnessed. ERISA itself requires only that the spousal consent be witnessed. The critical question in *Lasche*, as here, was whether the spousal consent was, in fact, witnessed. The blank witness-signature line in *Lasche* implied the lack of a witness, which makes sense. If there had been a witness, he or she would have signed as directed by the form. In our case Mrs. Burns's consent form contains no specific place for a witness to sign; the form itself does not direct the required witness to do anything at all. Although the consent form did not designate a place for the witness to sign, it does not necessarily follow that there was no witness. It only means we must look further for evidence of a witness, as the Plan did.

Of course, when making benefits determinations, a pension plan's review typically centers on plan documents; as a matter of sound plan administration, a pension plan ought to supply spousal-consent forms that specify a place for the required witness to sign. That will

suffice in most cases to determine the validity of the consent. As we have explained, however, this case is an exception, largely because Dr. Burns for all intents and purposes *was* the Plan. Under the unique circumstances presented here, the Plan reasonably concluded that Dr. Burns witnessed Mrs. Burns's written consent, as required by ERISA. Accordingly, Dr. Burns's sons are the proper beneficiaries of their father's survivor pension, and the Plan properly denied Mrs. Burns's claim for benefits.

AFFIRMED.